## MICHIGAN BANK *v.* ELDRED.

1. Evidence that by the articles of partnership one partner had no right to indorse negotiable paper, is inadmissible to defeat a *bonâ fide* holder of such paper indorsed with the firm name by a member of the firm, and taken by such *bonâ fide* holder for value, and without notice of the articles.
2. Where a partnership is in the habit of indorsing negotiable paper, having blanks left for the date, and gives the paper so indorsed to a person to use—he to fill the blank when he wishes to use it—the firm is liable on the paper with the date filled in, when, thus complete, it has passed to the hands of innocent *bonâ fide* holders for value.
3. The power to fill the blanks for dates implies in favor of such holders a power in the person trusted, to change the date, after the note has been written, and before it is negotiated.
4. It is error to charge upon a state of facts of which no evidence has been offered.

ERROR to the Circuit Court for Wisconsin, the case being this :

The Michigan Insurance Bank brought suit against Anson Eldred, Wm. Balcom, and Elisha Eldred, composing the firm of Eldreds & Balcom, as indorsers of a promissory note dated June 12th, 1861, given by one F. E. Eldred, and the body and signature of which were in his handwriting.

The summons was served upon Anson Eldred, the only defendant residing within the District of Wisconsin, and the only one who appeared in the cause. The execution of the note, its indorsement by Elisha Eldred, one of the firm of Eldreds & Balcom, with the firm name, demand of payment from the maker, non-payment by him, and notice to the indorsers of non-payment, were all proved. The date of the note, as originally written by the maker, F. E. Eldred, had been August 12th, 1861; and the word "June" had been written by him over the word "August."

The defendant, Anson Eldred, then offered to read in evidence a clause of the articles of copartnership of the firm of Eldreds & Balcom, to the effect that Elisha Eldred, one of the firm, and who, as above stated, had indorsed this note

in the firm name, had bound himself not to use the firm name except for the benefit of the said joint business.   The evidence was objected to by the defendant, but the objection was overruled, and testimony received.

There was no pretence that the bank had any knowledge of the articles of copartnership or of the purpose for which the copartnership's name in this instance had been used.

The defendant then introduced the deposition of F. E. Eldred, the maker of the note, and the brother of Anson Eldred, the defendant.   He testified that the note was in his handwr'ting; that the indorsement of Eldreds & Balcom was made by Elisha Eldred, one of the firm; that he transferred the note as security for a loan about the time the note bore date.   He said further:

"I had an arrangement with the firm of Eldreds & Balcom, by which they indorsed my notes and I indorsed theirs; and the indorsements were made in blank, and were filled by the holders as they wanted to use them.   This note was indorsed in that way, and this arrangement was known to Anson Eldred as well as to the other partners.   The word 'June' was written by me, and was written by me before I used the note."

The defendant then read depositions, which showed that this note was transferred to the bank as collateral security for moneys lent to F. E. Eldred, the maker.   Here the defendant rested, and upon this evidence the judge, in charging, made use of the following language:

"If the note in suit was never actually negotiated to the bank, but got up by Eldred and accepted by the bank in pursuance of a corrupt agreement between said Eldred and the bank to defraud the defendant, then the plaintiff cannot recover."

The testimony was without the least proof tending to show that this note had not been negotiated to the bank, or any tending to prove that it was "got up by Eldred and accepted by the bank in pursuance of a corrupt agreement between said Eldred and the bank to defraud the defendant."

Verdict and judgment having gone for the defendant, the bank brought the case here.

*Mr. Lynde, for the plaintiff in error*, submitted as too plain for argument,

1. That the paper having been negotiable paper, and received by the bank before due for a valuable consideration, the court had erred in allowing the clause from the articles of copartnership of Eldreds & Balcom to be read, without proof that the bank had notice of the clause.*

2. That the court had charged the jury upon a supposed or conjectural state of facts, of which no evidence has been offered; inducing them perhaps to indulge in conjectures, instead of to weigh the testimony; a sort of charge which was decided by this court, in *United States* v. *Breitling*,† to be " *clearly* error."

*Mr. Cary* submitted that the transactions, from beginning to end, were irregular; that when Elisha Eldred, who in indorsing under any circumstances acted in violation of his duty to his partners, indorsed here, he indorsed in blank, in blank as to both dates and amounts; and that the instrument in its altered date bore on its face such marks of irregularity as to justify the charge.

*To this it was replied,* that F. E. Eldred was authorized by the arrangement between him and the firm to fill up the blanks; *dates* as well as amounts.   *He* wrote the whole note originally, and the word "June" afterwards; but the word was written before the instrument was negotiated.

Mr. Justice CLIFFORD stated the case, and delivered the opinion of the court.

Promissory notes, given for the payment of money, without any condition or contingency, and payable to order or bearer, are as much commercial instruments as bills of exchange, and the title to the same, and their transfer from

---

* Murray *v.* Lardner, 2 Wallace, 110.          † 20 Howard, 252.

one person to another, are governed and regulated by the same rules of commercial law.

Authorities may be found where it is held that it is not essential to the character of a promissory note or bill of exchange that it should be negotiable, and that other words besides the words " or order," or the words " or bearer," may be employed to express the quality of negotiability; but it is not necessary to discuss those topics, as the inquiry before the court has respect to the execution, transfer, and title of a negotiable promissory note in the ordinary form.[*]

Examined carefully, the pleadings and evidence exhibit the following facts, which are material to the present investigation: Claiming title to the note in question, the plaintiffs instituted the present suit against the defendant and one Uri Balcom and Elisha Eldred, alleging that they were copartners in trade under the firm name of Eldreds & Balcom. They, the defendants, were engaged in business both in Chicago and Milwaukee, and the record shows that they were sued as indorsers of the note described in the declaration. Only one of their number, to wit, the defendant, resided in that State, and he only was served with process. Besides a special count against the defendants as the indorsers of the note, the declaration also contained the common counts, to which was annexed a copy of the note, as notice that the note would be offered in evidence under those counts. Process having been served, the present defendant appeared, and pleaded the general issue, and the parties went to trial, and the verdict and judgment were for the defendant. Exceptions were duly taken by the plaintiffs to the rulings and instructions of the court, and they sued out this writ of error, and removed the cause here for re-examination.

Some further reference to the facts proved at the trial is necessary, in order that the precise nature of the questions presented in the bill of exceptions may be understood.

Founded as the declaration was upon a promissory note, it was only necessary for the plaintiffs, under the general

---

[*] Wells. *v.* Brigham, 6 Cushing, 6; Raymond *v.* Middletor, 29 Pennsylvania State, 530; Story on Bills, § 60.

issue, to prove the execution of the note, the signature of the indorsers, the demand of payment of the maker, the dishonor of the note, and notice of the dishonor, and non-payment to the indorsers. Having proved those facts, they introduced the note in evidence, of which the following is a copy:

DETROIT, June 12, 1861.

$4000.   Sixty days after date I promise to pay to the order of Eldreds & Balcom four thousand dollars at the Michigan Insurance Bank, value received.

(Signed)        F. E. ELDRED.

Indorsed on the back of the note is the name of the firm to which the defendant belongs, to wit, Eldreds & Balcom, and the allegations of demand, protest, and notice of dishonor and non-payment were fully proved.

Witnesses were examined upon both sides, from whose testimony, as reported in the bill of exceptions, it appears that the maker of the note was engaged in business at Detroit, in the State of Michigan; that he and the firm of which the defendant is a member entered into an arrangement to interchange accommodation indorsements for business purposes; that the understanding was that the firm should indorse whatever paper he, the maker of that note, should find it necessary to use in his business, and that he, in consideration thereof, should indorse their paper intended for discount, to such an extent as they might desire.

Pursuant to that arrangement the respective parties indorsed numerous blank notes for each other, and it appears that the senior partner of the firm indorsed at one time some fifty or fifty-five blank notes of the kind, and that the defendant knew what was done, and advised that the indorsements should be made. Packages of such blank notes, signed by the maker of the note in controversy, were sent by express to that firm for their indorsement, and when they were indorsed in blank they were returned through the same channel to the party by whom they were forwarded, and it appears that the note described in the declaration is one of the notes indorsed by the senior partner of the firm.

Approved as the arrangement was by the defendant, he has no cause for complaint; and it also appears that the maker of the note borrowed money of the plaintiffs and that he indorsed the note to them as collateral security in the regular course of business.

Depositions were also introduced by the defendant, and he offered in evidence the third article in the copartnership agreement of the indorsers of the note, which reads as follows: " That neither of the parties shall employ any of the moneys, goods, or effects belonging to the said copartnership, *or engage the credits thereof*, except for the benefit of the said joint business."

Seasonable objection was taken by the plaintiffs to the introduction of that article as evidence, upon the ground that it was irrelevant and incompetent, but the court overruled the objection and the same was read to the jury, and the plaintiffs then and there excepted to the ruling of the court. Instructions, supposed to be pertinent to the issue, were then given by the court to the jury, to which no exceptions were taken, but the court also instructed the jury to the effect that if the note in suit was never actually negotiated to the bank, but was got up by the maker of the note, and was accepted by the bank, in pursuance of a corrupt agreement between the maker of the note and the bank to defraud the defendant, then the plaintiffs cannot recover; to which instruction the plaintiffs then and there excepted.

Objection, in the first place, is taken by the plaintiffs in argument to the ruling of the court in admitting in evidence the third article of the copartnership agreement.    Attempt is made to sustain that ruling, upon the ground that the evidence tended to show that the partner who indorsed the note with the firm name was unauthorized " to engage the credit" of the firm except for the joint business of the company; but there are two decisive answers to that suggestion : (1.) That the indorsements were made in pursuance of a previous understanding and arrangement between the firm and the maker of the note, and the evidence reported in the bill of exceptions shows that the defendant advised his partner to

indorse the parcel of notes which contained the one in controversy. (2.) That the plaintiffs had no knowledge of the contents of the articles of copartnership, nor of any fact or circumstance showing, or tending to show, that the indorsement was made without authority. On the contrary, the maker of the note, examined by the defendant, testified that the indorsement on the note described in the declaration was made by one of the partners of the defendant; that he, the witness, transferred the note to the plaintiffs as security for a loan made at the time the note bears date; that he had an arrangement with that firm that they should indorse his notes and that he would indorse their notes; that the indorsements were made in blank, and were filled up by the respective makers as they wanted to use the notes in their business, and that the note in controversy was indorsed in that way with the knowledge of the defendant as well as the other partners.

Unaccompanied by evidence showing, or tending to show, that the plaintiffs had knowledge of the restriction contained in the copartnership agreement, or the subsequent introduction of such evidence, it is quite clear that the article of the copartnership agreement read to the jury was irrelevant and incompetent, as it clearly appeared that the plaintiffs were indorsers for value at the date of the note in the usual course of business, without notice of any equities between the antecedent parties.

Such a party is regarded, in the commercial law, as a *bonâ fide* holder of the negotiable instrument, and the rule is irrepealably established by the decisions of this court that the indorser under those circumstances takes the title unaffected by any equities between the antecedent parties to the instrument, and may recover thereon, although, as between the antecedent parties to the same, the transaction may be without any legal validity.*

---

* Goodman *v.* Simonds, 20 Howard, 363; Murray *v.* Lardner, 2 **Wallace,** 110; Bank of Pittsburgh *v.* Neal, 22 Howard, 108; Swift *v.* Tyson, 16 **Peters,** 15; Goodman *v.* Harvey, 4 Adolphus & Ellis, 870.

Bills of exchange or promissory notes may be transferred by indorsement, or, when indorsed in blank or made payable to bearer, they are transferable by delivery; and the settled rule of law is, that if such a bill or note, so indorsed or made payable to bearer, be misappropriated by one to whom it was intrusted, or even if it be lost or stolen and is subsequently negotiated for a valuable consideration to a third person, who receives it in the usual course of business, without knowledge of the condition annexed to the possession of the instrument, or of the means by which the possession was acquired, his title is wholly unaffected by any such breach of trust, or by any such unauthorized or felonious acquisition or appropriation of the note, and may recover the amount against any of the prior parties to the instrument.*

Nothing can be inferred adverse to the authority of the member of the firm to make the indorsement from the fact that the blanks in the note were not filled up when he received it from the maker, as it is fully proved that the maker of the note was authorized by the arrangement between him and the firm to fill up the blanks and insert the date and the amount of the notes as he found it necessary to use the same in his business, and that defendant, as one of the partners, had knowledge of that arrangement.

Suppose, however, there was no proof of such knowledge on the part of the defendant, still it is well settled law that where a party to a negotiable bill of exchange or promissory note containing blanks, intrusts it to the custody of another, whether the blanks are in the date or the amount of the note, and whether it be for the purpose of accommodating the person to whom it was intrusted, or to be used to raise money for his own benefit, such bill or note, especially if it be indorsed in blank, or is made payable to bearer, carries on its face an implied authority, in the person to whom it is so intrusted, to fill up the blanks in his discretion; and, as

---

* Chitty on Bills, ed. 1842, 257; Belmont Branch Bank v. Hoge, 85 New York, 65; Hoge v. Lansing, 35 Ib. 136.

between such party to the bill or note and innocent third parties, holding the bill or note as transferees for value, in the usual course of business, the person to whom it is so intrusted must be deemed to be the agent of the party who committed such bill or note to his custody; and the legal conclusion is, that in filling up the blanks he acted under the authority of that party, and with his approbation and consent.*

So, where a party signs his name to a blank paper, as a means of accommodating another person, he thereby authorizes that person to whom he delivers the paper, and for whose accommodation he signed it, to fill up the instrument, and the conclusion of law is, that the filling up the instrument under those circumstances, inasmuch as it is done by the authority of the party who signed the paper, is his act, and that as between him and innocent holders of the instrument after it is filled up, he is bound by his signature, if the instrument was negotiated for value before it fell due, and in the usual course of business.†

Testimony was introduced by the plaintiff to show that the indorsement of the firm name on the back of the note was made before the same was negotiated to them as security for the discounts to the maker, but the introduction of such evidence was unnecessary, as the presumption of law, in the absence of opposing testimony, is that such an indorsement, if without date, was made at the time the bill or note was executed, and before the same was negotiated to the holder.‡

II. Apart from that ruling of the court, the plaintiffs also contend that the instruction given to the jury, as recited in the bill of exceptions, is erroneous, and that the judgment should be reversed on that account, even if it be held that

---

* Mitchell v. Culver, 7 Cowen, 336; Goodman v. Simonds, 20 Howard, 361; Violett v. Patton, 5 Cranch, 142; Russel v. Langstaffe, 2 Douglass, 514.

† Bank v. Kimball, 10 Cushing, 373; Collis v. Emett, 1 H. Blackstone, 313; Montague v. Perkins, 22 English Law & Equity, 516.

‡ Ranger v. Cary, 1 Metcalf, 369; Balch v. Onion, 4 Cushing, 559; Rice v. Isham, 1 Keyes, 44.

the ruling of the court in admitting in evidence the third article of the copartnership agreement is correct.

Contradicted as the first assumption of the instruction is by the testimony of the maker of the note, it does not seem to require any extended argument to show that it is unfounded, especially as it finds no support in any fact or circumstance introduced in evidence by either party.

Discounts were obtained of the plaintiffs by the maker of the note, and he negotiated the note in controversy to the plaintiffs as security for such loans, transferring the note to them at the time the loans were made.

Parties sometimes obtain discounts on such paper by inlorsing their own name on the note, but it is a regular course of business frequently adopted and equally legitimate for a party to give his own note for the amount of the loan, and to negotiate a note like the one in question to the lender as collateral security; and, whether the business is transacted in the one way or the other, the title of the lender of the money to the note negotiated as security for the loan is equally valid to the amount of the money loaned.*

. But the second assumption of the instruction is even more unjustifiable than the first, as it imputes concerted action, and a corrupt agreement between the maker of the note and the plaintiffs to defraud the defendant, when in point of fact there is not a particle of evidence in the record to sustain the charge, or which has any tendency to support any such theory.   When a prayer for instruction is presented to the court, and there is no evidence in the case to support the theory of fact which it assumes, the prayer for instruction should be denied, and if given by the court it is error, as the tendency of such an instruction is to mislead the jury by withdrawing their attention from the legitimate points of inquiry involved in the issue.†

It is clearly error in a court, said Chief Justice Taney, in

---

* Chicopee Bank v. Chapin, 8 Metcalf, 40; Stoddard v. Kimball, 6 Cushing, 469; Blanchard v. Stevens, 3 Ib. 162; Atkinson v. Brooks, 26 Vermont, 569.

† Goodman v. Simonds, 20 Howard, 359.

*United States* v. *Breitling,** to charge the jury upon a sup-
posed or conjectural state of facts, of which no evidence has
been offered.   Such an instruction presupposes that there is
some evidence before the jury which they may think suffi-
cient to establish the facts hypothetically assumed in the
charge of the court, and if there is no evidence which they
have a right to consider then the charge does not aid them
in coming to a correct conclusion, but its tendency is to em-
barrass and mislead, and may induce them to indulge in
conjectures instead of weighing the testimony.

Reference is made to the fact that the word June is writ-
ten over the word August in the date of the note, showing
that the date originally was August, instead of June, as it
now is; but the conclusive answer to that suggestion is, that
the maker of the note testifies that he wrote the word June
as it now is in the date of the note before he negotiated the
note to the plaintiffs, and as he was the agent of the firm in
filling up the note, the defendant, as between him and the
plaintiffs, has no cause of complaint.

JUDGMENT REVERSED, and the cause remanded, with direc-
tions to issue

A NEW VENIRE.