McFarland, J.,
delivered the opinion of the Court.
*778 Young brought this action against W. H. Grider,. W. B. Waldron, and Sam Tate, ’upon a promissory note for ten thousand dollars, ($10;000), payable to Young, “twenty-four months” after date, and dated the 21st of December, 1865. Grider was discharged upon his plea in bankruptcy, and a verdict and judgment rendered against Waldron and Tate, who have appealed in error.
The main defense was presented under a special' plea of non est faetum. The facts are as follows:— Grider, desiring to borrow money, was informed that Young had it to lend, and applied to Waldron to become his surety; and, also, requested him to procure Tate to sign the note, as he did not wish to ask him himself. Waldron consented, and drew the note; leaving the number of months blank. The note was then signed by Grider, and by Waldron, as security, and was taken to Tate. Tate at first refused, as he was already on some of Grider’s paper that had been allowed to go to protest; but at length consented,, signed it as security, and delivered it to Waldron, upon (the understanding that Grider in using it should fill up the blanlc, perhaps, with “six;” and, at all events, with not more than “ twelve ” months: — and,, also, upon the verbal guaranty of Waldron to save him harmless. The note was then by Waldron delivered to Grider, for the purpose of borrowing the money upon it. Whether Grider was then told that he was not authorized to fill up the blanlc for a longer period than “twelve” months, is somewhat in conflict. Waldron proves, very positively, that the note was *779 delivered upon this express condition; and that Grider-was fully informed of all that transpired between him and Tate. Grider, on the other hand, disproves this: perhaps, however, not in such positive terms. Grider then visited Young at his home in Haywood county,, presented the note,'and proposed to borrow the money.. The terms were agreed upon: and, on conference, it was agreed to fill up the blank preceding the word months, with the words “ twenty-four”: — making the note due in twenty-four months. This was done in the presence of Young; and, in the absence of Waldron and Tate. The testimony shows that nothing was-said to Young, or in his presence, indicating that Grider’s authority to fill up the blank, was in anyway limited; and, as to this, there is no conflict. Thereupon Young paid to Grider an amount in gold, which, estimated at the premium at which it was then quoted in the Memphis newspapers, amounted to the face of' the note, ten thousand dollars, ($10,000), — this being the premium agreed upon for the gold. It was agreed at the time that Grider should pay ten per cent, interest for the loan; and two separate notes for this interest were executed to Young by Grider; which notes, however, are not in suit.
It appears that Waldron, afterwards, gave Tate a written guaranty against his liability; and that Waldron filed the claim against the estate of Grider in bankruptcy.
There is proof raising the question of ratification by Tate and Waldron that need not be referred to.. The vital question is, — assuming the facts to be as *780 contended for by Waldron and Tate: — Do these facts constitute any defense to the action? Assuming that,— at the time Tate signed the note, and at the time it was delivered to Grider, — Grider was expressly instructed that he was not authorized to fill up the blank for a longer period than “twelve” months: yet, that in point of fact, Grider did fill up the blank with the words “ twenty-four,” in the presence of Young, but without disclosing his want of authority to do so, and obtained the money upon it in the manner stated; upon such facts, What is the law governing the case? This is not a case of alteration; and the authorities upon that subject do not apply. These- words were written on the face of the note before its delivery. The execution of the note was not complete until this blank was filled. And Grider, in this and in the delivery of the note, acted as the agent of Waldron and Tate. It is argued that he exceeded his authority, and that the act does not bind them.
The authorities fully establish, that where a party signs, or endorses, a negotiable note or bill, containing blanks as to. dates or amounts, and entrusts it to another to raise money or to negotiate for his own use,— this carries upon the face of the paper an implied authority in the . person to whom it is so entrusted, to fill up the blanks in his discretion. Michigan Bank v. Eldred, 9 Wallace, 544.
This general proposition is not seriously controverted. But it is argued that although this is so, yet in such a case, if there be special limitations agreed upon, at the time, as to the extent of the *781 authority given to the party to fill up such blanks, and the mode in which the blanks shall be filled;-;— then, as between the original parties to the bill, this authority must be strictly pursued; — and if the authority be exceeded, then the makers and endorsers are not bound, unless the paper be in the hands of an innocent holder for value, in the due course of trade, and without notice. It is also argued that Young, being the payee of the note and the party to whom it was first passed, does not stand in this attitude.
The case of Fullerton v. Sturges, before the Supreme Court of Ohio, presented this question. The facts of that case présent every possible aspect of the question that arises in this; and, in some respects, in a much stronger light in favor of the defendant. A judgment for the plaintiffs was affirmed, and the Court said:— “No rule is better settled or founded upon stronger reasons than that which affirms the liability of one entrusting his name in blank to another, to the full extent to which such other may see fit to bind him, when the paper is taken in good faith and without notice, actual or implied, that the authority given had been exceeded; or that the confidence reposed has been abused. It has the effect of a general letter of credit, and the rule' is founded not only upon that principle of general jurisprudence which casts the loss, when one of two equally innocent persons must suffer, upon him who has put it in the power of another to do the injury; but, also, upon that rule of the law of agency which makes the principal liable for the acts of his agent, notwithstanding his private instructions *782 have been disregarded, when he has held the agent ont as possessing a more enlarged authority.” 4 Ohio, 529. The doctrine of this case is fully sustained by numerous others. Violet v. Patton, 5 Cranch, 142; Michigan Bank v. Eldred, 9 Wall., 544; Bank of Pittsburg v. Neal, 22 How., 96; Van Durer v. Howe, 1 New York, -; Montague v. Perkins, 22 English L. & E. Rep., 520; Grissom v. Fite, 1 Head, 332. This last was a case where the amount was left blank, and the note delivered to the maker, for whose accommodation it was made, and he was instructed to fill the blank for a sum not exceeding $500; but he afterwards, — in the presence of the plaintiffs, and in the absence of the defendant, — filled it for twice that sum. “ Yet,” says Judge Wright, “ if the plaintiffs were ignorant of his want of authority to so fill up and use said note and were bona fide holders, they would still be entitled to recover.” The case of Davidson v. Lanier, 4 Wall., 456, is not in conflict with this view. In that case, the suit was brought by the party upon whom the bill was drawn, and who had filled it up for his own benefit. The argument that Young could not be an innocent holder, because he was the payee of the note and the party to whom it was first negotiated, is fully answered by these authorities. Young was not a party to the transaction; and we are unable to see the reason why he is not as much an innocent holder as a party to whom he might have transferred it the next day.
It is next argued that Young was not a bona fide holder, because, at the time, he contracted for a greater *783 Tate of interest than six per cent; taking two separate notes for this unlawful interest. We do not concur in this view. This note was not discounted at all: its full value was paid in gold. We see no reason. why, in such a transaction, a contract to take the gold at ci premium, does not stand upon the same .ground as any other contract for the sale of gold.
The notes given for the interest are not involved in this case. They have not been collected, as the record states; and, we presume, are not collectable; at least, to the extent of the excess over six per cent.
We do not deem it important to discuss the several propositions in the charge of the Circuit Judge. We think the charge contains no error of which the •defendants can complain.
Let the judgment be affirmed.