ELLIOTT BUILDING AND LOAN ASSOCIATION *v.*
PETER KAROPCHINSKY ET AL.
[No. 66, October Term, 1928.]

*Decided January 17th, 1929.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*J. Wallace Bryan,* with whom were *Standley L. Richardson* and *Allan W. Rhynhart* on the brief, for the appellant.

*Helen Sherry,* with whom were *Sherry & Sherry* on the brief, for the appellees.

Adkins, J., delivered the opinion of the Court.

The bill of complaint in this case, filed June 17th, 1927, by Peter Karopchinsky and Mary Karopchinsky, his wife, appellees, against the Elliott Building and Loan Association of Baltimore City, appellant, alleged: (1) that plaintiffs are the owners of the leasehold lot of ground and improvements known as 208 Maryland Avenue; (2) that on April

3rd, 1927, plaintiffs were fraudulently induced to sign a mortgage of said property in the sum of $600, they not knowing the contents or the object of said paper; (3) that at the time of the execution of said mortgage they were not indebted to defendant, nor did they apply for a loan from it; (4) that foreclosure proceedings have been instituted by the defendant and the said property is being advertised for sale; (5) that plaintiffs have no adequate remedy at law. The prayer of the bill is for an injunction to restrain the defendant from advertising and selling said property; that the said mortgage be declared null and void and not a lien on plaintiff's property; and for further relief.

The answer, filed on October 6th, 1927, admits the ownership of said property by plaintiffs, the execution of said mortgage, and the institution of the foreclosure proceedings. It denies the allegations of fraud, and that plaintiffs were ignorant of the contents and the object of said mortgage, and that plaintiffs were not indebted to defendant and did not apply for this loan. Testimony was taken in open court and, at its conclusion, the court signed a decree permanently enjoining defendant from proceeding further with the foreclosure proceedings, and declaring the mortgage null and void. This appeal is from that decree.

Plaintiffs with their son Edward on Saturday April 2nd, 1927, having read an advertisement in a newspaper, went to the store of the Sachs Auto Company to purchase an automobile, and agreed to pay $575 for a used Studebaker car, and made a deposit of $50 on account. Peter, the father, with Edward and Martin, another son, returned to the Sachs place on the next day, Sunday, April 3rd, and made an additional payment of $25, and the father signed with his mark a paper which turned out to be the mortgage in controversy in this case. This paper at the time was blank at least as to the property to be mortgaged. At the same time he endorsed a blank check, which subsequently was filled out to the order of the plaintiffs for $600, and signed by officers of the defendant. While they were there, Sachs called up the office of Morrison D. Bell "and asked some one to come up

there and explain terms to these people in reference to buying a car and I (Mortimer E. Bell) went up there and got the mortgage and the check signed by the father, that is he put his mark on there." The father's mark on these two papers was witnessed by Martin. It was then arranged that some one from the Morrison office would go up to plaintiff's home that afternoon and obtain the signature of Mrs. Karopchinsky to these papers. Accordingly Morrison D. Bell went there that afternoon and, in the presence of Peter and two of the boys (Edward and Michael), had Mrs. Karopchinsky sign the form of mortgage, and a paper which subsequently turned out to be an application for a mortgage loan. As this paper appears in the record, it is dated April 4th, 1927 and addressed to Morrison D. Bell, and purports to employ him on a ten per cent. commission to secure a loan of $600 on the property No. 208 Maryland Avenue, Westport, on a second building association mortgage. She also, at the same time, endorsed the check which Peter had previously endorsed at Sachs,' and another check which subsequently turned out to be a check from Morrison D. Bell to the plaintiffs for $500. Peter also at the same time endorsed this paper by his mark and Martin signed as witness. At the same time, Morrison D. Bell, who was a notary, according to his testimony, which is disputed, took the acknowledgment of both Mr. and Mrs. Karopchinsky to the paper purporting to be a mortgage. The testimony of plaintiffs and their children is that the mortgage signed by plaintiffs, the application for a loan signed by them, and the checks which they endorsed, were all presented to them in blank, and were represented to be contracts in duplicate for the car; that plaintiffs are both illiterate, cannot read and trusted the Bells. Edward, one of the sons, testified that, when he asked to see the mortgage, Bell said: "I am in a hurry to go to Washington and you can trust me that far and you would not understand this if you read it anyway;" that none of the papers were read to either of plaintiffs. This in substance was corroborated by all the family. It further appears from their testimony that the first they knew of a mortgage was when letters were re-

ceived from Bell demanding interest, and that they promptly denied that any mortgage had been given. On the other side, the Bells, testifying for defendant, insist that plaintiffs were told and understood that they were executing a mortgage of their home, and that Edward was requested to explain it to his mother, and to look at it and see if it was all right.

The testimony on both sides is far from satisfactory. As to vital facts it is entirely that of interested witnesses. Added to this, on the defendant's side, one cannot help wondering how the plaintiffs, who are manifestly illiterate and who required an interpreter when testifying, could have so perfectly understood conversations which they undertook to narrate on the stand. Then, too, it is difficult to rid one's mind of the suspicion that the testimony of the members of the family, who were plaintiffs' only witnesses, may have been materially colored by their objection to paying for a car which was taken from them by reason of a lien that was on it at the time of their purchase. However, it is fair to state that Mrs. Karopchinsky appears to have repudiated the mortgage before the car was taken away. On the side of defendant, the most material witnesses are the Bells, who are charged with fraud and whose conduct is not satisfactorily explained. Besides, each of them fixed dates for occurrences in which they respectively took part, and were willing to swear positively they were correct, even when confronted with convincing evidence to the contrary. Mortimer E. Bell continued to swear positively that his appearance at Sachs' was on Saturday, April 2nd, in spite of the fact that he said Mrs. Karopchinsky was not there when he was present, and it is conclusively shown that she was there on Saturday and not on Sunday; and also notwithstanding he was shown a notation of his own of the payment of $25 on April 3rd, which he admitted was made in his presence. Morrison D. Bell was most positive and persistent in his statement that he did not go to the home of plaintiffs on Sunday, April 3rd, but that it was on the following day, in spite of evidence to the contrary which to us is entirely convincing.

In view of the absence of any sufficient motive on the part of the Bells for the deliberate commission of such an abominable fraud as that attributed to them by plaintiffs, we are disposed to credit such parts of their testimony as is inherently probable, and not satisfactorily controverted by documentary or other testimony; and to take with all due allowances testimony offered by plaintiffs. We are unable to agree with the view indicated by the learned trial judge that a case of actual and deliberate fraud has been made out against the Bells, or either of them. But we concur in the conclusion of the chancellor that the mortgage should be annulled.

We have no difficulty in finding that Morrison D. Bell was acting as the agent of defendant. He was constantly obtaining mortgages for it; its blank checks were put in his possession so that he could without preliminary application to, or consultation with, its officers or directors, arrange for loans; settlements were made by him at his own office, and settlement sheets were made out by him without the presence of any other representative of the association and without even the formality of sending the association a copy; and in this case there is not a particle of evidence that application was ever made to the association for the loan. The whole transaction was put through by Bell, check made out and (according to Bell's testimony) delivered to plaintiffs to be endorsed by them before it was signed by defendant; and the defendant, with this knowledge, signed the check and adopted his acts. It follows that whatever defense would have been available if Bell had been named as mortgagee is available against the defendant.

While we do not find that Morrison D. Bell, or his employee, Mortimer E. Bell, was guilty of actual fraud in the obtention of the mortgage, we do find that their conduct was reprehensible. The practice of presenting blank papers to people to sign, especially to illiterate and inexperienced people, cannot be approved. It may well be that Bell undertook to explain to plaintiffs that they were signing a mortgage. But it is far from clear to our minds, even from his own testimony, that plaintiffs knew, or that he told them, the mort-

gage was to be of their home. And we are satisfied plaintiffs, if they knew they were executing a mortgage, thought it was of the car.

We are not unmindful of the numerous cases in which we have held that one who is able to read an instrument, or is in a position to have it read to him, but carelessly neglects to do so, cannot, in the absence of fraud or material misrepresentations or deceit, plead ignorance of its contents. A notable case recently decided is *Blum v. Apitz,* 149 Md. 91.

Assuming the absence of fraud, the present case would be entirely within the principle of that decision, if defendant were assignee of the mortgage without notice, and if the property had been described in the mortgage when it was executed by plaintiffs. But neither of these elements exists. See also *Standard Motor Co. v. Peltzer,* 147 Md. 509, where an innocent third party was not involved.

On the present record we should find it difficult to give the plaintiffs relief if the mortgage, when presented to them for execution, had been as it now appears. But at that time, as admitted by Bell, there was no description or mention of the property to be conveyed. And with that clause omitted any one reading the paper would naturally infer that the property to be conveyed was the car. The opening paragraph of the mortgage describes the mortgagors as members who have received from the association "an advance of six hundred ($600.00) dollars, on four (4) shares of its stock, being applied toward the purchase price of the hereinafter described property." The "hereinafter described property" did not naturally apply to plaintiffs' home, because it was already paid for; at any rate the money supposed to be borrowed was not to be applied to paying for it. It was, however, to be used to pay for the car. In our opinion it was constructive fraud to insert the description which now follows after the execution of the mortgage, unless the mortgagors agreed that it should be inserted. And from the evidence we do not think they did.

Although plaintiffs are illiterate, it would be difficult to excuse their signing the paper without having it read to

them by members of the family, who were present and could read, if reading it would have enlightened them. But for this neglect they can be charged with knowledge of only what would have been revealed had the paper been read.

It is true that, in the application above referred to as it now appears in the record, the property No. 208 Maryland Avenue is mentioned as the property on which the loan is sought. Morrison D. Bell testified that reference to this property was in the application at the time it was signed by Mrs. Karopchinsky; and, if it was, she would have been informed of it if she had had it read to her by her son Edward, who was present and who is not illiterate. Bell is contradicted by at least two of plaintiffs' witnesses on this point. But assuming his testimony to be true, and giving all possible effect to it, it would not bind Peter Karopchinsky, who did not sign the application. And, in passing, it is more than a little significant that Peter was not asked to sign that paper. Bell testifies that he knew the property was held by plaintiffs as tenants by the entireties. It tends to show, at least, that the whole thing was rushed through, and supports plaintiffs' testimony that not much time was lost in reading papers or making explanations. Unless the mortgage is good as to both plaintiffs, it has no force as to either. Property thus held can only be conveyed by the joint action of the owners.

*Decree affirmed, with costs to appellee.*

Parke, J., concurs in the result.