## GOLDEN PRAGUE BUILDING, LOAN & SAVINGS ASSOCIATION *v.* PAUL CRIMI ET AL.

[No. 27, January Term, 1937.]

*Decided April 9th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Louis J. Jira,* with whom were *Dobihal & Novak,* and *Powell Vickers,* on the brief, for the appellant.

*A. Herman Siskind* and *William C. Rogers,* for the appellees.

SLOAN, J., delivered the opinion of the Court.

By a deed dated May 30th, 1923, The Golden Prague

Building, Loan and Savings Association of Baltimore conveyed a lot of ground in Baltimore, known as No. 2002 East Eager Street, to Frank Magri and Matilda Magri, his wife, for five dollars and other considerations. The same day, the Magris, together with Paul Crimi and Sophia Crimi, his wife, executed a mortgage to the building association to secure the sum of $2,700, giving as security No. 2002 East Eager Street and No. 918 North Luzerne Avenue, which the Crimis had owned since December 4th, 1913. Sophia Crimi is the sister of Frank Magri. The Crimis had no interest in the purchase of the Eager Street property, and joined in the mortgage for the purpose of securing the payment of the purchase money. While the mortgage appears to be the unconditional promise of all the mortgagors to pay the entire mortgage debt, interest, taxes and other charges, in the manner and at the times therein set forth, the Crimis contend that their agreement with James F. Klecka, the attorney for the association, was that their property should be released upon the payment of $350 of the mortgage debt, and, more than this sum having been paid on account of the principal, they filed a bill of complaint to compel the building association to execute such a release, and from a decree requiring it so to do the association appeals. Frank Magri and Matilda Magri were made defendants, but no relief was prayed against them.

The evidence is that one James F. Kline and Mary Kline, his wife, in 1923 were the owners of a house and lot No. 2002 East Eager Street in Baltimore, and on May 1st, 1923, they conveyed the property to the Golden Prague Building and Loan Association. Mrs. Kline, who testified for the plaintiffs, said she had not heard, until testifying, of the Golden Prague Association; that they sold to James Klecka for $2,000, receiving from him a check for $1,350, the balance to be paid to another association in settlement of their mortgage. She said, except for the printed matter, the deed was blank. She questioned the propriety of this at the time when "one of

them (Klecka or another whom the witness did not know) spoke up and said, "That is all right. Everything will be O. K. as long as you get the check," her husband adding, "Don't worry as long as we get ours." This is important only as showing, with what follows, the signing of instruments in blank was a custom of Klecka's.

The property was then sold by Klecka to Frank Magri and his wife, Matilda, and it is what happened between them and the plaintiffs that resulted in this suit. The Magris wanted to buy a home and they only had one hundred dollars. One day in May, 1923, Frank came home and told his wife, Matilda, that he had found a place that would suit them, No. 2002 East Eager Street, which could be had for $2,800, but the owner wanted $450 cash. The record does not disclose everything that was said and done, but the upshot of it all was that Paul and Sophia Crimi were asked by the Magris to have their property, No. 918 North Luzerne Avenue, stand as security for $350. They agreed to it. The next step in the negotiations appears to be an agreement for the purchase and sale, which in part is as follows:

"This agreement, made this 23rd day of May, nineteen hundred and twenty-three, between Edward F. Peroutka, agent for James F. Klecka, of the first part, Frank Magri and Matilda Magri of the second part.

Witnesseth, that the said part of the first part do hereby bargain and sell unto the said part of the second part, and the latter doth hereby purchase from the former the following described property, situate and lying in Baltimore City known as No. 2002 East Eager Street subject to ground rent of $36.00. At and for the price of Twenty-Seven Hundred and Seventy-Five Dollars, of which Twenty-Five dollars —————— Dollars have been paid prior to the signing hereof and the balance is to be paid as follows: Seventy-Five Dollars to be paid on May 24, 1923, and a First mortgage for $350.00 to

be given on property 918 North Luzerne Street within 30 days of contract, May 23, 1923."

> Signed,
> "Edward F. Peroutka  (Seal)
> Agent for
> > James F. Klecka  (Seal)
> > Frank Magri  (Seal)
> > Matilda Magri  (Seal)

Test:
> Payment of $75.00 paid on May 24, 1923.
> Edward F. Peroutka,
> Agent for James F. Klecka."

Mrs. Magri says she never saw anyone except James F. Klecka in any of the meetings or transactions; that her husband brought this agreement home for her to sign. The Crimis did not sign it, so that it cannot be excluded from the evidence on the ground that it was merged into or rescinded by the mortgage. It was only admitted at the trial as to the Magris, but later Paul Crimi was cross-examined at length with respect to it without any restrictions, and through him the facts recited in the agreement are as fully in evidence against the association as the paper itself. If Klecka is to be regarded as the attorney of the association, then the agreement was admissible against it.

On May 30th, 1923, the deed to Frank Magri and Matilda Magri from the Golden Prague Building, Loan and Savings Association was executed by Emil K. Skrabek, its president. He testified: "We never owned the house." "I signed it for Jim Klecka." "Mr. Klecka came in and brought a deed to sign and I said, 'What is it?' and he said, 'Sign it for me' ". "Q. Who gave you this deed to sign? A. Mr. Klecka. Q. Did you say anything to Mr. Klecka at that time about the signing of this deed? A. I told him I don't know what it is—I say, "What is it"? He said, "This is the deed I put in the building association." The evidence is that the association had nothing to do with the purchase. Klecka bought it from

the Klines and sold it to the Magris at a net profit to himself of between six and seven hundred dollars.

Instead of two mortgages, one from the Magris and one for $350 from the Crimis, they executed a joint and several mortgage of both properties to the Golden Prague Building Association for $2,700, at Klecka's home. Their testimony is that it was signed in blank; that there was nothing on the paper but the printed matter, no script or typewriting. When Paul and Sophia Crimi had signed the paper, after insisting that they were to be bound for only $350, they were told to go, which they did, the Magris remaining to complete the transaction.

Regarding the loan, Mr. Skrabek, president of the association, testified: "We did not have no connection with these people. It was lawyer Klecka bring the loan in and when the loan passed he said for two houses one mortgage, and we (the committee) went out to look at them." Klecka said nothing about $350, "he just gave us the loan. I thought it was for him. Many times we gave him a loan." Klecka at the time was the attorney for the association and so continued to 1927. He was elected annually by the stockholders. The loan was accepted, and on May 30th, 1923, the association's check for $2,800 was signed by the president and treasurer and countersigned by the secretary. Klecka's memorandum of settlement, on file with the association, shows a credit, "cash paid on account, $100," so that the loan agreed with the mortgage.

On the association's ledger the account is carried against Frank Magri and wife, with a notation thereon, "918 Luzerne Ave. security." It also appears on Klecka's memorandum of settlement, so that this information was so communicated by Klecka to the association, but it also seems to be the extent of its knowledge of the situation with respect to the mortgagors. The association knew that the mortgage loan was to the Magris, with the Crimis as sureties, but there is no evidence that it knew of the Crimis as sureties until after the loan was made. It doesn't sound probable that the association

would have put all of the loan except $350 on the Eager Street house, which Klecka had just bought for $2,000.

The testimony of Sophia Crimi was that she was not very familiar with the English language and had little more familiarity with Italian. She had testified that she signed a paper in blank. At the conclusion she was asked, "You did not read this paper at all after you signed it, did you?" and answered, "I tell you the truth, I trusted the lawyer. Now I would open my eyes."

It is a familiar rule that, acting within the scope of his authority, knowledge of the agent is knowledge of the principal. *Mechem on Agency,* sec. 1803. When, however, the interest of the agent is adverse to that of the principal, the knowledge of the agent will not be imputed to the principal. *Lohmuller Bldg. Co. v. Gamble,* 160 Md. 535, 541, 154 A. 41. In this case a gross fraud has been perpetrated, with the perpetrator not involved in the proceedings, but the victims, as between themselves, are trying to fix the blame and leaving it to us to say which should suffer the loss. The only inference to be drawn from the arguments on both sides is that, unless the fraud of the attorney, Klecka, may be imputed to the appellant, then we must leave the parties as we found them.

The appellees rely for their contention on the case of *Elliott Bldg. & Loan Assn. v. Karopchinsky,* 156 Md. 302, 144 A. 254. The attorney of the association in that case was charged with having inserted in a mortgage signed in blank a description of the plaintiff's leasehold property, whereas they thought or understood they were executing a mortgage on the automobile they were buying from a dealer who had called in the attorney. There was no evidence that the attorney had any interest in the transaction aside from the fee he expected and received for obtaining the loan and preparing the papers. In that case there was an application signed by Mrs. Karopchinsky, and not by her husband, on the property afterwards described in the mortgage. It was said in the opinion that while this might have been notice to her, it would

not bind the husband, as the property was held by entireties. The attorney was shown in that case to have been so clothed with authority with respect to loans that his acts could be treated as those of the association he represented. The chief difference between the *Elliott Association* case and the *Golden Prague* case is that in the former the attorney was acting solely for his client, the association, while in this case Klecka was a principal acting for himself with respect to the sale of his own property, and had an interest in the business being transacted which was adverse to his client, the building association. It was as much to his interest to deceive it, as to defraud the appellees. *Lohmuller Bldg. Co. v. Gamble, supra.*

On this record there is no question that the Crimis were betrayed by Klecka, in whom they had reposed their confidence. They trusted him to insert in the mortgage the understanding they had with him and the Magris. "The filling of such blanks in a wrongful manner by a person having express or implied authority to fill them in another way is deemed to be a breach of confidence merely." 2 *C. J.* 1253, sec. 142. And in *Blum v. Spitz,* 149 Md. 91, 101, quoting *Ewart on Estoppel* 35, it is said: "It is your duty in executing a document to see that it is that which you believe it to be, for otherwise some third person may be led to believe that you had agreed to that which in reality you have not even considered," and when an innocent third party becomes involved in the transaction, the loss must fall on those whose carelessness and neglect have occasioned the loss. *Bank of Bristol v. Balto. & O. R. Co.,* 99 Md. 661, 681, 59 A. 134; *Hardy v. Chesapeake Bank,* 51 Md. 562, 590, 591; *Michigan Ins. Co. v. Eldred,* 9 Wall. 544, 552, 19 L. Ed. 763. In this case the association did nothing but furnish the money which was required for Klecka to sell and the Magris to buy Klecka's property. There is nothing in the record from which it can be inferred that it had any knowledge or notice of the understanding between Klecka, the Magris and the Crimis, or that it partici-

pated in the fraud on the Crimis. If Klecka had merely represented the association as its attorney, and not as a principal, we would have had the case of *Elliott Bldg. & Loan Assn. v. Karopchinsky,* 156 Md. 302, 144 A. 254, which is the sole reliance of the appellees, and which we hold does not apply, but that *Lohmuller Bldg. Co. v. Gamble,* 160 Md. 534, 154 A. 41, and *Colonial Bldg. & Loan Assn. v. Boden,* 169 Md. 493, 182 A. 665, do apply.

*Decree reversed, with costs.*