RACHEL B. HICE CREASMAN v. FIRST FEDERAL SAVINGS & LOAN
ASSOCIATION OF HENDERSONVILLE AND KENNETH YOUNGBLOOD,
SUBSTITUTE TRUSTEE

No. 86

(Filed 6 September 1971)

1. Rules of Civil Procedure §§ 41, 50— motion to dismiss — motion for
directed verdict

In nonjury trials, the motion for nonsuit has been replaced by
the motion for a dismissal under G.S. 1A-1, Rule 41(b); in jury trials,
by the motion for a directed verdict under G.S. 1A-1, Rule 50(a).

2. Rules of Civil Procedure § 50— sufficiency of evidence — jury trial —
motion for a directed verdict

In a jury trial, the motion for a directed verdict is now the only
procedure by which a party can challenge the sufficiency of his ad-
versary's evidence to go to the jury.

3. Rules of Civil Procedure § 50— jury trial — motion for dismissal —
treatment as motion for directed verdict

Where a motion for dismissal is made pursuant to Rule 41(b) in
a jury case, it may properly be treated as a motion for a directed
verdict under Rule 50(a).

4. Cancellation of Instruments § 10; Fraud § 12— signing note and deed
of trust in blank — misrepresentations by third party — action against
lender — insufficiency of evidence

Evidence that plaintiff's son secured plaintiff's signature upon a
blank note and deed of trust by falsely telling her that he wanted to
mortgage a trailer located on her property for $600, and that he
thereafter filled in the blanks so that the note was for $6,000 and the
deed of trust encumbered plaintiff's home, held insufficient to be
submitted to the jury in plaintiffs' action against the lender to set
aside the note and deed of trust, where there was no evidence that
plaintiff's son acted as agent for the lender, that any agent of the
lender colluded with plaintiffs' son to obtain plaintiff's signature by
fraudulent misrepresentations, or that any agent of the lender had
any reason to suppose plaintiff's son would obtain plaintiff's signature
in such manner, since where one of two parties must suffer by the
bad faith of another, the loss must fall upon the one who made it
possible for the loss to occur.

5. Principal and Agent § 4— testimony that witness "represented" lender

Witness' statement that in January 1965 he was "representing"
a savings and loan association in Buncombe County was properly
stricken by the trial court, the question of agency being one of law
for the court.

6. Subrogation— money lent to pay deed of trust — subrogation of lender

Where a savings and loan association lent plaintiff money to pay
off a prior deed of trust, and the money was used to extinguish that

encumbrance, the savings and loan association is subrogated to the rights of the first creditor.

**7. Fraud § 2— fraud in the factum**

As a general rule, fraud in the *factum* arises from a want of identity or disparity between the instrument and the one intended to be executed.

**8. Fraud § 2— signing of instrument in blank — misrepresentations as to how blanks would be filled — fraud in the factum**

When one signs an instrument in blank, the plea of *non est factum* or fraud in the *factum* is not available to him, notwithstanding he may have been induced to sign by false representations that the blanks would be filled in a certain way, since he cannot say that the instrument he signed was different from what he intended to sign.

ON *certiorari* to review the decision of the Court of Appeals (reported in 10 N.C. App. 182, 177 S.E. 2d 770) affirming the judgment of *Hasty, J.,* entered at the 16 March 1970 Session of BUNCOMBE.

Action to cancel a note and deed of trust.

Plaintiff alleges: Defendant Savings & Loan Association (Association) is the holder of a note in the amount of $6,000.00, dated 29 January 1965 and secured by a recorded deed of trust on 2.85 acres owned by plaintiff in Buncombe County. Plaintiff did not sign the instruments, which were totally without any consideration to her. She neither borrowed nor received any money from the Association. If it paid out any money on the note and deed of trust it did so without plaintiff's knowledge and without any request by her. The "deed of trust is void because it was fraudulently obtained on the representation of Claude Creasman that this instrument was to encumber a trailer located on the property of the plaintiff." In procuring the deed of trust Claude Creasman acted as the agent of the Association, which accepted the note and deed of trust knowing them to have been fraudulently obtained. Plaintiff first learned of the deed of trust when the Association started foreclosure proceedings.

Defendant trustee filed no answer.

Defendant Association denied all the allegations constituting plaintiff's cause of action. As a further defense it alleged: (1) The action is barred by G.S. 1-52(9), the three-year statute of limitations. (2) When payments on the note became in arrears, defendant trustee duly foreclosed the deed of trust and

defendant Association became the last and highest bidder. It is now the owner of the lands described in the deed of trust.

At the trial before Judge Hasty and a jury plaintiff's evidence consisted of her deposition, taken 8 March 1968, and the testimony of her son, Claude M. Creasman (Creasman).

Plaintiff's testimony, summarized except when quoted, follows: Plaintiff is 88 years old; she "can't hear much," and she "can't see much either." Creasman is her son. She bought her home, the land described in the deed of trust in suit, in 1942. She has never given a mortgage on the property nor borrowed any money from anybody in her life. She neither applied to the Association for a loan nor authorized her son to do so. In January 1965 Creasman "brought in some kind of paper here on that little old house trailer out there. . . . I put my name on something. It just seems like a dream to me. No, I never intended to mortgage my house or my home. I found out there was a mortgage on my property . . . two, three, or four weeks ago (February 1968) . . . ."

On cross-examination, when presented with the deed of trust in suit (P-1), plaintiff testified, "I can't remember if I wrote my name on there. . . . It looks like my signature that I signed on the paper for Claude." She denied that she had acknowledged the deed of trust before the notary public whose certificate was attached to the instrument.

Creasman's testimony tended to show: In January 1965 he told Mr. Bob G. Sherman, the executive vice-president of the Association, that in 1964 he "had put a loan" on his mother's home without her knowledge; that the loan was due and "the holders" were threatening foreclosure; that he did not want his mother to find out what he had done and, if Sherman could get another loan for him from the Association, he "would work very hard and get that loan off very quickly." At first Mr. Sherman said he did not want to get involved. At last, however, he consented to help Creasman if he "could get his mother to sign the First Federal papers." Without plaintiff's knowledge Creasman "signed her name by him" on a loan application, paid the appraisal fee, and filled out a financial statement. Later, he also paid the title examination fee. Creasman requested a loan of $8,750.00, but "the Board of Directors wouldn't go along with it, cut it to $6,000.00."

Creasman took the Association's blank forms—note, deed of trust, and closing statement—to his mother. He told her he had to raise a small amount of money, about $600.00, and "wanted to mortgage the trailer" which was in her backyard. She was reluctant to sign but, when he told her that he badly needed the money, "she said she would do it as long as it was the trailer but not to put anything about her land and home in the deed of trust, and she signed the papers, the blank form papers. . . . " Thereafter Creasman delivered the note and deed of trust to the attorney for the Association. At the time plaintiff signed the papers there was no typewriting on any of the papers. "She signed papers in blank that consisted of a closing statement, a note, and a deed of trust."

At this point in Creasman's testimony the following exchange took place between him and the Court:

"THE COURT: You say she knew she was signing the papers in blank? Your Mother?

"A. I presume that she knew that she was signing them, yes.

"THE COURT: And she told you not to put the real estate in the papers?

"A. That is right, and she asked me how much it was going to be, and I told her that I didn't know exactly, had to figure the interest, but it would be somewhere around $600.00."

The loan proceeds ($6,000.00 less some expenses in the amount of $100.00), were turned over to the holders of the first mortgage. Plaintiff herself received no money, and she did not discover the deed of trust until early in 1969.

During the fourteen months prior to 29 January 1965, Creasman, then a licensed real estate broker, had been in contact with Mr. Sherman almost daily "about loan matters, in property and recommending loans, and getting appraisals and getting things signed and selling notes and discount and all the things you do for savings and loan." He said, "In these loans in which I received monies from First Federal, I do not contend I was on the payroll at First Federal. . . . I sold these notes to the Savings & Loan and they gave me money in exchange for them. . . . Actually it was money that would have gone to the

Creasman v. Savings & Loan Assoc.

borrower or to the seller of the note if they had not told the Savings & Loan to pay it to (me). . . . "

At one point in his testimony Creasman stated that in January 1965 he "represented First Federal (defendant) in Buncombe County." Upon defendant's motion this statement was stricken from the evidence, and plaintiff excepted.

At the beginning of Creasman's testimony, after the court had sustained a number of objections to his testimony, plaintiff's counsel requested the court to permit him to examine Creasman in the absence of the jury in order to get his testimony "in the record now and see what may be competent." At the conclusion of this examination, which covers six and one-half pages of the record, Creasman summed up that testimony as follows: "I am saying that I used the First Federal as a place to get money on notes that I wanted to discount. . . . " No part of this examination was thereafter offered in evidence.

Out of the presence of the jury Creasman stated that the prior note and deed of trust, which the Association's loan paid, were instruments he "had gotten a year previously through getting her (plaintiff) to sign some blank papers." With the exception of this statement, Creasman's testimony before the jury was substantially the same as that given in its absence.

At the conclusion of plaintiff's evidence Judge Hasty called upon plaintiff to elect between the allegation that she had not signed the note and deed of trust (paragraph 5 of the complaint) and the allegation that the deed of trust was obtained by Creasman's fraudulent misrepresentation that the instrument was to encumber a trailer located on plaintiff's property (paragraph 8 of the complaint). The response of plaintiff's counsel was: "I will proceed on the allegations of paragraph 8 because the evidence is she did sign the papers, but she signed them in blank . . . grounds in fraud."

Defendant then moved for "a judgment of involuntary dismissal" upon the grounds (1) that the action was barred by the three-year statute of limitations and (2) that the evidence failed to establish fraud invalidating the instrument in the hands of defendant. Judge Hasty denied the first ground, allowed the second, and dismissed the action with prejudice.

Plaintiff appealed to the Court of Appeals, which affirmed the judgment dismissing the action with prejudice. It noted, however, that defendants' proper motion was for a directed

verdict under Rule 50 and not for a judgment of involuntary dismissal. Upon plaintiff's petition we allowed *certiorari.*

*Cecil C. Jackson, Jr., for plaintiff appellant.*

*Prince, Youngblood, Massagee & Groce for defendant appellees.*

SHARP, Justice.

**[1-3]** This case was tried before a jury. In nonjury trials the motion for nonsuit has been replaced by the motion for a dismissal under G.S. 1A-1, Rule 41(b) ; in jury trials, by the motion for a directed verdict under G.S. 1A-1, Rule 50(a). In a jury trial, the motion for a directed verdict is now the only procedure by which a party can challenge the sufficiency of his adversary's evidence to go to the jury. *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297. Defendant, therefore, mislabeled its motion when it moved "for dismissal on the grounds of insufficient evidence to go to the jury," and the judge duplicated this error in nomenclature in his judgment. However, "where a motion for dismissal is made pursuant to Rule 41(b) in a jury case, it may properly be treated as a motion for directed verdict under Rule 50(a). The trial court does not determine the facts, but simply determines whether the plaintiff has made a 'case for the jury.' " *Bragen v. Hudson County News Company,* 321 F. 2d 864, 868 (3d Cir. 1963). *Accord,* 5 Moore's Federal Practice § 50.03(1) (2d ed. 1969).

"On a motion by a defendant for a directed verdict in a jury case, the court must consider all the evidence in the light most favorable to the plaintiff and may grant the motion only if, *as a matter of law,* the evidence is insufficient to justify a verdict for the plaintiff." *Kelly v. Harvester Co.,* 278 N.C. 153, 158, 179 S.E. 2d 396, 398.

Plaintiff's appeal presents only the question whether her evidence was sufficient to withstand defendant's motion for a directed verdict. *In re Johnson,* 277 N.C. 688, 693, 178 S.E. 2d 470, 473-474. Applying the rule enunciated in *Kelly v. Harvester Co., supra,* the answer is No.

When the court required an election between the inconsistent allegations in the complaint, plaintiff's counsel correctly and succinctly appraised her case by this statement: "[T]he evidence is she did sign the papers, but she signed them in blank."

---

Creasman v. Savings & Loan Assoc.

---

Creasman, who testified that he fraudulently procured the signatures of his 85-year-old mother upon the note and deed of trust, stated positively and unequivocally that they were blank forms at the time she signed them—"no typewriting on any of the papers." He also testified that she knew she was signing the papers in blank; that she admonished him "not to put anything about her land and home in the deed of trust"; and that, in response to her question as to the amount of the loan, he told her he would not know the amount until the interest was figured. In this context, plaintiff's testimony that Creasman "brought in some kind of paper here on that little old trailer out there" cannot be expanded into a statement that he represented to her she was merely signing a *completed chattel mortgage* on a trailer. Furthermore, the allegation of the complaint, under which plaintiff elected to proceed, is that the instrument which she signed "was to encumber a trailer" on her property. This averment clearly implies that the description of the property to be conveyed was to be written in at a future time.

[4] The theory of plaintiff's case is that in January 1965 Creasman was the Association's agent, engaged in procuring loans for it; that, as such agent, he secured plaintiff's signature upon a blank note and deed of trust (the Association's printed forms) by falsely telling her he "wanted to mortgage the trailer that sits on her property" for an amount "somewhere around $600.00"; that he thereafter filled in the blanks so that the note was for $6,000.00 and the deed of trust encumbered her home. However, neither the evidence nor the law will sustain a finding that Creasman ever acted as agent for defendants. His testimony establishes that, in obtaining the loan which satisfied the prior mortgage on plaintiff's property, he was merely a prospective borrower applying for a loan. It likewise establishes that, in the other dealings he said he had with the Association, he was either representing a prospective borrower or acting for himself as the holder of a note seeking to discount the paper.

[5] In *Parker v. Brown,* 131 N.C. 264, 42 S.E. 605, the trial judge sustained the defendant's objection to this question: Was Spencer "the agent of Brown for the purchase of the lumber?" In upholding that ruling this Court said: "Whether the relation of principal and agent had been created depended upon the authority or power delegated. *What* that authority was is a question of fact, its effect a question of law. . . . The agency

being in dispute, the express or implied authority to act must be shown. The facts being shown, then, whether the relation of principal and agent is created becomes a question of law for the court to declare, and not for the witness." *Id.* at 265, 42 S.E. at 606. *Accord*, Stansbury, N. C. Evidence § 130 (2d Ed. 1963); 3 Am. Jur. 2d *Agency*, § 356 (1962); Annot., 90 A.L.R. 749. Clearly, therefore, Creasman's statement that in January 1965 he was "representing" the Association in Buncombe County was properly stricken.

[4, 6]   There is also no evidence to support plaintiff's contention that, in order to make the loan, the executive vice-president, or any other agent of the Association, colluded with Creasman to obtain plaintiff's signature on a note and deed of trust by fraudulent misrepresentation. Nor is there evidence that they had any reason to suppose Creasman would secure his mother's signature in the manner he stated. Incidentally, we note that the Association's board of directors lent plaintiff only the amount necessary to pay off the prior deed of trust, which was then in default. According to Creasman he had obtained that deed of trust and note in the same manner as the ones in suit. If so, those instruments were valid as to innocent third parties for the same reason the note and deed of trust here involved are valid. Therefore, having extinguished that encumbrance, defendant would be subrogated to the rights of the first creditor. *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745.

The rule governing this case is specifically stated in *Mielcuszny v. Rosol*, 317 Pa. 91, 94, 176 A. 236, 237: "Where one executes a bond and mortgage in blank and places it in the hands of a third person, he assumes all the consequences of his act."

Golden Prague Bldg., *Loan & Savings Association v. Crimi*, 172 Md. 238, 190 A. 830, involved a mortgage which was signed in blank; "there was nothing on the paper but the printed matter, no script or typewriting." The mortgage, signed by Crimi, secured a loan made by the Loan & Savings Association to Magris, who was purchasing from Klecka, the attorney for the Loan & Savings Association, property owned by him. Klecka fraudulently failed to insert in the mortgage the limitation of liability upon which he, Crimi, and Magris had agreed. Upon discovery of the fraud, Crimi sued to reform and cancel the instrument. In denying relief the court held that the filling of

blanks in a printed mortgage form in a wrongful manner by a person having express or implied authority to fill them in another way is deemed merely a breach of confidence, and "when an innocent third party becomes involved in the transaction the loss must fall on those whose carelessness and neglect have occasioned this loss." *Id.* at 245, 190 A. at 833. *See* 59 C.J.S., *Mortgages* § 122 (1949) ; 23 Am. Jur. 2d, *Deeds* § 139 (1965).

This Court has long applied the foregoing rule to notes which were signed in blank and thereafter completed in violation of the maker's instructions. In *Phillips v. Hensley,* 175 N.C. 23, 94 S.E. 673, it is said:

"It is well settled that if the maker of an instrument intrusts it to another for use with blanks to fill up, such instrument so delivered carries on its face an implied authority to fill up the blank spaces and deliver the instrument.

"As between such party and innocent third persons, the person to whom the instrument is entrusted is deemed the agent of the party who committed the instrument to his authority. The ruling is founded upon the principle that where one of two persons must suffer by the bad faith of another, the loss must fall upon the one who first reposed the confidence and made it possible for the loss to occur." *Id.* at 25, 94 S.E. at 674. *Accord, McArthur v. McLeod,* 51 N.C. 476; *Humphreys v. Finch,* 97 N.C. 303, 1 S.E. 870; *Furst v. Merritt,* 190 N.C. 397, 130 S.E. 40.

Plaintiff argues that the foregoing doctrine is not applicable to this case because Creasman obtained her signature on the note and deed of trust "by a trick," which constituted fraud in the *factum;* that "the want of identity between the instrument she executed and the one she intended to execute" rendered the deed of trust and note void; and that no rights could be acquired thereunder even by innocent third parties. *Furst v. Merritt, supra.* This contention is untenable.

[7, 8] When one signs an instrument in blank the plea of *non est factum* or fraud in the *factum* is not available to him. "As a general rule, it may be said that fraud in the *factum* arises from a want of identity or disparity between the instrument executed and the one intended to be executed. . . . " *Furst v. Merritt, supra* at 401, 130 S.E. at 43. When a person signs a blank deed of

trust form he cannot say that the instrument he signed was different from what he intended to sign, for he intended to sign a blank form, leaving it to another to complete. In such a case, notwithstanding he may have been induced to sign by false representations that the blanks would be filled in a certain way, he knowingly executed the very instrument which he intended to execute. *See Medlin v. Buford,* 115 N.C. 260, 20 S.E. 463.

For the reasons stated, the decision of the Court of Appeals affirming the judgment of the Superior Court is

Affirmed.