WILLIAM DEVRIES & CO. *vs.* MILDRED W. SHUMATE.

*Injunction against Negotiating Promissory Notes delivered on a Condition which was not fulfilled—Cancellation of a Name on a Note—Notice.*

In March, 1878, L. of Warrenton with D. agent of the appellants of Baltimore, went to the appellee's house near Warrenton, and L. then and there out of D's presence, solicited the appellee as surety to execute certain promissory notes in favor of the appellants for merchandise previously sold to him, but for which debt the appellee was in no manner bound. The appellee refused to sign the notes, but finally, upon the importunity of L., signed them, L. being the principal maker. The notes were then handed by her to L. with the condition, of which D. was made aware, that they were to be delivered to the appellants only in the event that her act was approved by her adviser, P. P. expressed his non-approval, and the appellee thereupon demanded that the notes (which L. had handed to D.) should be surrendered. This was refused; and D. afterwards handed the notes to the appellants. On a proceeding to enjoin the appellants from negotiating the notes with the appellee's name thereon, and to have her name as surety thereon cancelled, it

LD:

1st. That these notes being still in the payees' hands, they were affected with all the knowledge acquired by their agent in the course of employment, whether that knowledge had been communicated to his principals or not.

2nd. That as there was no intentional delivery of the notes to the appellants' agent, either in person or by the appellee's authority, they were not perfected contracts, and did not bind the appellee as between herself and the appellants.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and IRVING, J.

---

Devries & Co. *vs.* Shumate.

---

*E. Calvin Williams,* for the appellants.

*E. Shriver Reese* and *John Scott,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

The object of the bill in this case was to obtain an injunction against the appellants to restrain the negotiation of two certain promissory notes, dated the 12th of March, 1878, payable at six and twelve months from date, with the appellee's name as surety thereon, and to have the signature of the appellee to the said notes cancelled. The Court below decreed the notes to be void as against the appellee, and that the appellee's signature thereto be cancelled; and further, that the appellants be restrained from negotiating or transferring the notes with the appellee's signature thereon. That decree is the subject of the present appeal.

It is not necessary to state the history of the transactions between the appellants and Robert Lear, the principal in the notes, prior to the 12th of March, 1878. It is sufficient to state that at that time Lear was indebted to the appellants, Baltimore merchants, in the sum for which the two notes in question were made, for merchandise previously sold him. For this debt the appellee was in no manner bound. She was the mother-in-law of Lear, and it appears that when he was negotiating for the purchase of the goods from the appellants, and the question arose as to the security he could furnish, he stated that he could get his mother-in-law to become his surety for the goods. There is not, however, a pretence in this case that she had ever authorized Lear to make such assurance, or that she ever even knew or supposed that the parties were dealing with any reference whatever to her becoming liable as surety for the goods. But the appellants, acting upon the statement made by Lear that he could furnish his mother-in-law as surety, about the date of the notes in question,

sent a salesman in their store, a Mr. Dryden, to Warrenton, in Virginia, the place of business of Lear, to get notes for the amount due them, with the appellee as surety thereon. And the whole question in this case depends upon what occurred upon this mission of Dryden.

Upon going to Warrenton, Dryden at once went to Lear and informed him of the object of his visit, and urged the making of the notes. The appellee residing some distance from the town, Lear and Dryden went to her house, and, while the latter remained in one room, the former sought an interview with the appellee in another, and there, finding her greatly opposed to signing the notes, after persuading and urging for at least an hour and a half, the appellee was at last induced to sign the notes, which had been previously prepared, with the distinct understanding, according to the overwhelming preponderance of proof, that the propriety of her signing them should be submitted to and approved by her friend and adviser, Captain A. E. Payne, before they were delivered or passed to the appellants. The notes, signed with this understanding, were taken possession of by Lear, and the condition upon which they were signed was communicated to Dryden, as well by the appellee herself, as by Lear, who was entrusted with the notes to be delivered to Dryden for the appellants upon the approval of Payne. For the purpose of safe preservation simply, according to the testimony of Lear, he handed the notes to Dryden before they saw Captain Payne, and though Payne, when made aware of the facts, positively refused to approve of the signing the notes by the appellee, Dryden, having obtained the possession of the notes in the manner stated, refused to surrender them, though required to do so by repeated demands. In proof of the condition upon which the notes were signed the testimony is quite conclusive. That of the appellee herself, her daughter, her son, and her son-in-law, all concur in proof of the fact, to which

may be added the silent acquiescence of Dryden when the condition was stated to him by Captain Payne, at the time when the latter's approval was sought.

If, however, additional proof of this be needed, it is furnished in the circumstances of the case.   Dryden himself proves, as do the witnesses on the part of the appellee, that he and Lear did go to Capt. Payne's office, the day after the notes were signed, as requested by the appellee, and that he there met the appellee's son, who demanded the surrender of the notes.   He also proves that Capt. Payne questioned him as to the condition under which the notes were signed, and insisted that they should be surrendered.   The question then is, for what purpose did the parties go to Capt. Payne's office, if not for the object testified to by the appellee's witnesses?   According to the testimony of Dryden, he says that he understood the purpose of being directed to see Capt. Payne was, to have proved to him, the witness, "that the notes were all right and secured."   This, in view of the fact that he had been sent to get her name on the notes, and that it had been obtained only after the greatest difficulty and persuasion, to say the least of it, wants probability.   He was making no question with her as to whether the notes were all right and secure, and she was not interested in convincing him of that fact.   She certainly evinced no anxiety that the notes should be accepted, and why she should have directed this agent to call upon her friend and adviser, after the notes had been made and actually delivered, according to the testimony of this witness, to be assured that the notes were all right and secure, is not easy to comprehend. Indeed, the testimony of this witness is at material and irreconcilable variance with that of all the witnesses on the part of the appellee, as to the facts attending the signing the notes and his knowledge of those facts, the circumstances under which the notes were obtained by him from Lear, and as to what occurred in Capt. Payne's office in regard

to the notes the day after they were signed.  And as he is the only witness opposed to the five on the part of the appellee, to this most material part of the case, this Court cannot do otherwise than reject his statement, and adopt the plain conclusion resulting from the testimony of the witnesses on the part of the appellee,—that is, that the notes were signed by the appellee to be delivered only in the event that her act was approved by her friend and legal adviser.

This being the conclusion of fact, as to the condition upon which the notes were signed by the appellee, and the further fact being uncontroverted that Capt. Payne positively declined to approve the act of signing the notes, and that, notwithstanding such non-approval, the notes were retained by the agent Dryden against the repeated demands for their surrender, the principles of law applicable to the case are but few and simple.

If the notes had been negotiated before maturity and passed into the hands of a *bona fide* holder for value, without notice, quite a different case from the present would have been presented.  But the notes being still in the hands of the payees whose agent obtained them under the circumstances stated, these payees, as principals, are affected with all the knowledge acquired by the agent in the course of his employment, whether that knowledge was communicated to the principals or not; such knowledge being material to the transaction in which the agent was employed, and of facts which it was his duty to communicate.  *Evans on Ag.*, (*Am. Ed.*,) 230, 231. Therefore, in such case as this, the knowledge of the agent is the knowledge of the principal, and the latter cannot stand in a better position, in respect to the transaction in question, than he would if he had conducted the business in person instead of by agent.  And such being the position of the appellants, the question is, have they title to the notes as against the appellee?

It is quite clear, if there was no intentional delivery of the notes to the agent of the appellants, either in person or by authority of the appellee, they were not perfected contracts, and do not bind the appellee, as between herself and the appellants. Delivery is as essential to the legal existence and binding force of a promissory note as it is to perfect the existence of any other written contract, and without an intentional delivery it is a nullity. *Cox vs. Troy*, 5 *B. & Ald.*, 474; *Marvin vs. McCullum*, 20 *John.*, 288. And if a promissory note, signed by the maker, be by him placed in the hands of his agent for delivery to the payee, whether conditionally or not, as long as it remains in the hands of the agent it is undelivered, and may be recalled by the maker; and while so held the payee has no right to it, unless it be wrongfully withheld by the agent—a thing that could not be if the note was only to be delivered on a certain contingency, and that event had not happened. 1 *Dan. Neg. Ins.*, 56, 57, and the cases there cited; 1 *Pars. on N. & B.*, 48, 50; *Byles on Bills*, (3rd *Am. Ed.*,) 202. Here the notes were signed by the appellee and were allowed to be taken by Lear, to be delivered only upon condition that her act was approved by her adviser; for this purpose therefore Lear became the agent of the appellee, and was bound to conform to her instructions. If he, for any reason of his own, was induced to hand over the notes to Dryden, regardless of the instructions of his principal, Dryden having knowledge of those instructions, as he doubtless had, such delivery was fraudulent and void, as between the appellee and the payees in the notes. And if, as testified to by Lear, the notes were simply delivered to Dryden for safe keeping and not as completed or perfected contracts, and he refused to give them up when required, there has been no delivery of the notes that can bind the appellee. In either aspect therefore the appellee is entitled to have the notes cancelled so far as she is concerned. We must

therefore affirm the decree appealed from, with costs to the appellee.

*Decree affirmed.*

(Decided 11th March, 1880.)