## JOHN G. SCHWIND *vs.* W. W. BOYCE ET AL.

*Notice of Lien on Property Purchased to Agent of Purchaser is Notice to Principal—Agreement to Create Lien on Shares of Stock.*

When property is purchased for a party by his agent, and this agent has knowledge of a lien by a third party affecting the property, the principal is bound by such knowledge of his agent.

At the time of the formation of a corporation it was agreed between the plaintiff, who was the president and principal owner, and one D., an employee, that the latter should subscribe for twenty shares of the capital stock and pay for the same with money borrowed from a building association. Plaintiff guaranteed this loan. Although denied by D. the evidence established the fact that the agreement of the parties was that D. should not be entitled to the shares so subscribed for until the indebtedness on account thereof should be fully paid, and that plaintiff was to have a lien on the shares for the sums advanced or guaranteed by him. The certificate remained in the stock book of the company from which it was taken by D. without plaintiff's knowledge, and was sold to the defendant through the negotiation of a person who was the agent and attorney both of D. and of the purchaser. Upon a bill to restrain the transfer of the shares and to enforce plaintiff's claim against the same. *Held*, that the plaintiff was entitled to a lien for the amounts advanced or guaranteed by him on the shares so issued to D.; that the attorney and agent of the purchaser from D. had knowledge of this claim ; that such knowledge was notice to the purchaser, and that plaintiff's lien on the stock is consequently enforceable against such purchaser.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City (SHARP, J.), dismissing the bill of complaint. The prayer of the bill was :

1st. That a writ of injunction issue against all the defendants prohibiting them from causing, allowing or effecting a transfer upon the books of the defendant corporation of the aforesaid 20 shares of stock to the name of William W. Boyce as owner.

2nd. That an injunction both mandatory and prohibitory issue against the defendant Boyce and Delaney, commanding them or either of them to deliver up to your complainant the said certificate of said 20 shares of stock now standing on the books of said corporation in the name of the defendant Delaney ; and that they or either of them be restrained from selling or disposing of the same.

3rd. That your complainant as pledgee may foreclose and satisfy his lien upon said 20 shares of stock by offering the same for sale at public sale.

4th. That from the proceeds of such sale your orator may deduct the amount of his lien and the costs hereby incurred, and that any balance remaining be distributed as this Court may direct.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Richard B. Tippett* and *Wm. S. Bansemer*, for the appellant.

The only question which necessitated the taking of this appeal is whether the knowledge of his agent and attorney, Boyd is to be imputed to Boyce. The buying of this stock for Boyce was a commercial transaction on the part of Mr. Boyd, acting as attorney and agent. He was clothed with the broadest discretionary powers. Boyce exercised no judgment at all in the matter. His object was to make a profitable deal and Mr. Boyd was to handle the stock in the best manner he should decide and was to share profits receiving a third. Boyce's money was simply placed in his agent's hands

to be manipulated in the agent's discretion: Under such circumstances the knowledge of the agent must be imputed to the principal. Whatever may be the rule in a few other jurisdictions, the Maryland decisions lay down the rule flatly that "the principal is bound and affected with notice to his agent and is equally bound by the notice." *Mayor and City Council of Baltimore* v. *Whittington*, 73 Md. 237; *Devries* v. *Shumate*, 53 Md. 215; *Meechem on Agency*, 718–719; *Reed's Appeal*, 34 Pa. St. 209; *Smith* v. *Ayer*, 101 U. S. 326; *Rogers* v. *Palmer*, 102 U. S. 263; *Dresser* v. *Norwood*, 17 C. B. N. S. 466; *Fischer* v. *Tuohy*, 186 Ill. 150.

Some few Courts have placed a restriction on the rule imputing the agent's notice to the principal, to the effect that the agent must receive the notice while in the course of performing the very matter in question and that his prior information can be ignored; but the foregoing authorities do not countenance this rule and it is not the accepted doctrine.

The remedy sought by the appellant is the proper one under the circumstances. *Stewart* v. *Rogers*, 19 Md. 118; *Bryson* v. *Raynor*, 25 Md. 433. A pledge not only covers the debt, but the interest upon it and all necessary expenses. *Dowler* v. *Cushwa*, 27 Md. 35. We rest the case on Mr. Schwind's strong equity in the matter. The stock is worth from $2,000 to $2,400 and when Schwind satisfies his claim, Boyce will still get approximately his purchase price.

*J. Cookman Boyd*, for the appellee.

The evidence does not prove that Schwind was entitled to a lien on the stock.

The stock was *fully* paid for by Delaney to Schwind in cash. The agreement on Schwind's part to become security to the building association for the second thousand dollars with which to take up the note he held was a new agreement, voluntarily made by Schwind for his own benefit, and made more than a year subsequent to the purchase of the stock. At this time the testimony shows that not one word was said by either party in reference to a lien on the Schwind Quarry Company's stock held by Delaney.

Testimony shows that Boyd was the agent of Delaney to
sell the stock and not of Boyce to buy it. He (Boyd) did
not hold himself out as Boyce's agent nor was he so consid-
ered. The evidence shows that *Boyd sold to Boyce* and *Boyce
bought from Boyd.* Mr. Boyce considered Boyd his attorney
simply because he had acted in that capacity for him in vari-
ous matters for six or seven years, but at the time of this
transaction he was not acting for him in any capacity. The
statement of Boyce that Boyd was his agent was erroneous,
caused by reason of the fact that Boyd had been his attorney
for several years past. Boyd had not been employed or au-
thorized by Boyce to act as his agent in this matter. He,
Boyce, acted in person for himself, dealing with and *buying*
*from* Boyd, the *agent of Delaney.* Boyd did not, *and legally*
*could not* act as attorney for vendor and vendee. It is a gen-
eral rule that a party cannot in any agency of this kind act as
agent or broker for both vendor and vendee in respect to the
*same* transaction. *Rasin* v. *Clark,* 41 Md. 159; *Blake* v.
*Stump,* 73 Md. 160.

An *agent* of the *seller cannot* become the agent of the *pur-*
*chaser* in the same transaction. *Story on Agency,* sec. 211;
*Wright* v. *Dannah,* 2 Camp. 203; *Dixon* v. *Broomfield,* 2
Chitty, 205.

Boyd only acted as Boyce's agent *after* the stock was
bought and the deal closed with Delaney, and then for pur-
poses of *selling* the stock that *Boyce bought in person* from
Boyd, agent for Delaney.

There is no evidence that Boyd had knowledge of any lien
held on this stock by Schwind.

Moreover the rule that notice to attorney is notice to client
has no application, except in special cases, to knowledge ac-
quired or notice received by the attorney *before the commence-*
*ment* or after the termination of the relation. 3 *Am. & Eng.*
*Ency.,* 322.

The question as to whether notice acquired prior to agency
may be binding on the principal has given rise to much diver-
sity of opinion. It is held by some authorities that to visit

the principal with notice of a fact known to the agent, such notice should have been gained by the agent during the course of the business in which he is employed. 1 *Am. & Eng. Ency.*, 1150. It is also held that the principal will be affected not only by notice acquired by agent during the continuance of the agency, but also by knowledge previously communicated, *provided it be present to the agent's mind during the transaction of his duties.*

The former view is held in this State in case of *Devries* v. *Shumate,* 53 Md. 211, where the Court says "principals are affected with all knowledge acquired by agent *in the course of his employment."* And again in *Whittington* v. *Mayor, &c.,* 78 Md. 238, viz :- "The principal is bound by notice received by his attorney (as such) *in same transaction."*

Even if the latter view be followed there is no testimony that the claim of Schwind of lien on this stock was present to Boyd's mind at the time of sale of stock.

Notice to an attorney binds the client only when the notice is a part of the particular cause in which the relation exists. *Stewart* v. *Sprague,* 71 Mich. 50. Thus in a suit to foreclose a mortgage, a mechanic's lien claim on the same property was afterwards filed. The same person acted as attorney for the lien claimant and for the mortgagee. It was held that the attorney's knowledge of the foreclosure suit did not charge the lien claimant with notice of that suit. *Pacific Mfg. Co.* v. *Brown,* 8 Wash. 352.

Boyce is an innocent holder without notice and for value.

PAGE, J., delivered the opinion of the Court.

The appellant, who was complainant below, charges in his bill that a certain Charles Delaney subscribed for twenty shares of the capital stock of the Schwind Quarry Company of the par value of one hundred dollars per share ; that being unable to make payment he borrowed the money from the Calverton Building Association, for the repayment of which the appellant became his surety ; that in order to protect the complainant and save him harmless, Delaney pledged the cer-

tificate of said shares to the complainant, and the same were deposited in the safe of the quarry company " for the purpose of turning it over to the control, keeping and possession of the complainant." That Delaney, who had been made Secretary of the quarry company, made default in his payments to the building association whereby the complainant's obligation on account of his suretyship became absolute, for the sum of $600 due to the association ; and in addition thereto the said Delaney on account of money paid by him for Delaney to the association for maturing instalments was indebted to him in the sum of $248.65. That Delaney was dismissed from the service of the quarry company and when he was about to leave the service of the company, he abstracted from its safe, without the knowledge and consent of the appellant, the certificate of the stock, and "in order to wipe out the equities existing between the complainant and himself, he has recently transferred" it to the appellee Boyce ; that Boyce if he had not actual notice " of the equities which then attached to the stock," had such notice as " put him upon inquiry in regard thereto." That Boyce is not a *bona fide* holder of said stock and that Delaney has still an interest therein and that Delaney is financially irresponsible. On final hearing the Court dismissed the bill and the complainant appealed.

The controlling questions in the case are, 1st, did the appellant have a lien on the stock and 2nd, if he had, did Boyce have actual or constructive notice of it?

As to the first question. Mr. Schwind testifies that he agreed to go his security to the building association, and that to secure him Delaney was to leave his certificate in the stock book until the association was repaid or until the stock was paid for. He further testified that there never was a delivery of the stock to Delaney. This testimony is in harmony with all the facts connected with the transactions of the parties. Mr. Schwind was the owner of the quarry. He proposed to form a corporation and put the business under its control. He desired that Delaney should be the owner of a portion of its stock. Delaney did subscribe for twenty shares, for which

he agreed to pay Schwind· two thousand dollars.    To enable him to do this, ·Schwind assisted him with the association. He first became his surety to the association for one thousand dollars, which Delaney subsequently paid.    For the residue Delaney gave his note to Schwind, and later on made another loan from the association to effect which Schwind aided him, by " hypothecating for him again."    When it is borne in mind that Delaney was financially irresponsible, it is not reasonable to believe that Schwind, as a reasonably prudent business man, would voluntarily put himself in a position where he might' be subjected to considerable loss, without providing some means whereby he could be protected.    He claims he did so by securing the pledge of the stock and that it was on that account that the certificate was not to be delivered until he had been made safe.    In fact it was not delivered, and Delaney never obtained the possession of it, until he abstracted it from the company's safe, after he had been discharged from its service, without Schwind's knowledge or consent.    Delaney himself makes no statement with reference to the formation of the quarry company, or as to how Schwind became his surety. He was asked ·if anything was said to Schwind after he had left the employment of the company " as to his having a lien " on the stock and his reply was, " he never made a claim of a lien on my stock at all to me.    All I have seen about a lien was when this paper was filed.    He never mentioned a word in reference to a lien to me."    All the details of the transac‐ tion as testified to by Schwind goes without denial from De‐ ·laney.    Being without substantial contradiction and harmoniz‐ ing as it does with what we regard as the probabilities of the matter, we must accept the statement he makes, and that being so are constrained to hold that the stock was pledged as set forth in the bill.    It appears from the proof that to secure the two thousand dollars, Delaney incurred a liability to the asso‐ ciation of $2,080.    Of this has been paid $1,514.51, leaving still due the sum of $565.49 for which Schwind is still liable as surety.    The stock is pledged to secure the payment of this sum, as well as interest due to Schwind, and whatever sum he

has to pay for Delaney to the association on account of fines and maturing installments.

The remaining question is did Boyce have actual or constructive knowledge of the lien? It is not claimed that he had actual notice, but it is contended on the part of the appellant that Boyd, who, it is said, was his attorney and agent in the transaction, had full notice, and that Boyce is affected with notice of everything that was within the knowledge of his agent. Boyce himself states in his evidence that Boyd was his agent, "with full authority," that he had given him power to act for him "in buying the stock" and that he had a verbal arrangement with him, that he "was to pay Mr. Boyd for acting as my (his) agent, one-third of what I (he) made on the stock." There is nothing in the testimony to contradict this statement, and the facts as they appear in the record fully warrant the view Mr. Boyce has taken of the matter. Boyd had been counsel for Boyce for six or seven years. The first he heard of the "stock transaction" was from Boyd in December, when Boyd offered to sell it to him. He knew however, then or shortly after and before the purchase was made, that Boyd was not the owner of the stock and that Boyd was merely to effect the purchase from Delaney. Boyce seems to have done absolutely nothing; he made no inquiries about the stock "only through Boyd," he gave Boyd full power to "act for him in the premises" with Delaney, he knew absolutely nothing about it except from Boyd, and he knew nothing of the quarry company; in fact everything was done by Boyd, who agreed to receive as compensation for his services one-third of what was made on the transaction. So thoroughly complete was Boyd's agency, that Boyce during it all was never brought in contact with Delaney and never saw him until they met for the first time at the taking of the testimony in this case. Under these circumstances it would appear idle to say that Boyd was not acting as Boyce's agent. The knowledge of Boyd in reference to Schwind's claim was acquired prior to the transaction in question in this case. He has at least derived it from Schwind's answer in the equity

case that was pending between Schwind and Delaney, in which Schwind in his answer to the bill had set forth substantially all the facts in reference to his claim. It cannot be supposed that Boyd could have forgotten or have failed to bear it in· mind during his dealings with Boyce, and if such a supposition were possible, the fact that Delaney said to him during the negotiations for the stock, that "if anything came out of these cases or any trouble for Mr. Boyce, he would make it good," make it entirely clear that he had not forgotten it. Under these circumstances the law applicable to the case is clear. In *Smith* v. *Ayer*, 101 U. S. 325; cited in *Mayor* v. *Whittington*, 78 Md. 238, where the question arose as to Ayer's notice of certain claims of another person, and· it was shown that the facts respecting them were within the knowledge of his attorney on whose judgment he had relied entirely, the Court said, that "the facts brought to the knowledge of their attorney in his inquiries respecting the note and the authority of Renick to pledge, are considered in law as brought to his knowledge * *. The law considers the principal as affected with notice of all facts, notice of which can be charged to his attorney." In another case, *The Distilled Spirits*, 11 Wallace, 356, the Supreme Court has made a more complete statement of the doctrine. There, the Court after stating that "in England the doctrine now seems to be established that if an agent at the time of effecting a purchase, has knowledge of any prior lien, trust or fraud affecting the property, no matter when he acquired such knowledge, is affected thereby," proceeds, "the general rule that a principal is bound by the knowledge of his agent, is based on the principle of law that it is the agent's duty to communicate to his principal the knowledge which he has respecting the subject-matter of the negotiation and the presumption that he will perform that duty. When it is not the agent's duty to communicate such knowledge, when it would be unlawful for him to do so, as for example when it has been acquired confidentially as attorney for a former client in a prior transaction, the reason of the rule ceases." After further discussion of the subject, the Court

says: "On the whole we think that the rule as finally settled by the English Courts, with the qualification above mentioned, is the true one, and is deduced from the best consideration of the reasons on which it is founded." This view is supported by the decisions in many of the States, and seems to be the better doctrine. The cases will be found collected in 1 *Am. & Eng. Ency. of Law*, 2nd ed., title Agency, p. 1150, to which we now refer. There were cited at the hearing two cases decided by this Court which were supposed to be in conflict with what we have said. But we do not think so. One of them, *Mayor* v. *Whittington (supra)*, decided that notice to the agent and attorney bound their principal. The words of the Court are, "and he, the principal, is equally bound by notice received by his attorney in the same transaction." But it is not decided whether notice which the attorney had received otherwise than in the same transaction would bind the principal or not. It was not necessary to go farther than it did in that case. The notice chargeable to the principal was such as his agent and attorney had derived from a legal proceeding in which a petition had been filed in his name, but without his actual knowledge that the proceedings showed the particular fact. The same may be said of the other case, *Devries* v. *Shumate*, 53 Md. 215. In that the Court said the principal was affected "with all the knowledge acquired by the agent in the course of his employment," a proposition not controverted in this, but not sufficiently broad to embrace the point now being considered.

Here, as we have said, Boyd had full knowledge of Schwind's equity and we cannot avoid the conclusion that he must have borne it in mind during the negotiations for the sale of the stock by Delaney. Boyce testifies that he was not informed of it. We think he should have been, but though he was not, the knowledge Boyd had must be imputed to him, and he now stands in no other or better attitude, than he would have had if he had received actual notice.

The decree below must be reversed and the cause remanded

for a new decree in conformity with the principles set forth in this opinion.

> *Decree reversed with costs to the appellant and remanded.*

(Decided January 17th, 1902.)