LOHMULLER BUILDING COMPANY *v.* JOSEPH A. GAMBLE, Receiver.

[No. 25, January Term, 1931.]

*Decided March 20th, 1931.*

The cause was argued before Bond, C. J., Pattison, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Leon H. A. Pierson,* with whom was *Richard E. Preece* on the brief, for the appellant.

*John T. Tucker,* with whom were *Keech, Deming & Carman* on the brief, for the appellee.

Offutt, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City for the plaintiff in an action in assumpsit brought by Joseph A. Gamble, receiver of the First National Bank of Dunbar, Pa., hereinafter called the bank, against the Lohmuller Building Company, on a promissory note dated December 30th, 1926, executed by the defendant to the General Lumber Products Company, hereinafter called the lumber company, for $1,395, and indorsed for value by the payee to the bank.

At the time that note was made, the defendant was engaged in the business of building brick and frame houses in Baltimore City; the General Lumber Products Company in the lumber business; and the First National Bank of Dunbar in the banking business. T. B. Palmer was general manager of the lumber company and also president, and a member of the discount committee, of the bank, and John W. Lohmuller was president of the Lohmuller Building Company.

Prior to the date of the note, Palmer solicited from the defendant a subscription to the capital stock of the lumber company, and by representations made by him to Lohmuller induced the defendant to subscribe to stock of that company valued for the purpose at $3,000, and in payment for that stock the defendant executed and delivered to the lumber company the promissory note to which we have referred.

On January 4th, 1927, that note was discounted by the bank and the proceeds credited to the account of the lumber company. Subsequently the bank was found to be insolvent, and on March 7th, 1927, the acting Comptroller of the

Currency, being thereto duly authorized, appointed Henry
E. Hackney receiver of it. The note being due and unpaid,
on April 25th, 1928. Hackney, as receiver, sued the defend-
ant on it, and on May 29th, 1929, the defendant appeared
and pleaded. On January 23rd, 1930, Joseph A. Gamble was
substituted for Hackney as receiver, the declaration was
amended to show that change, and the case proceeded to judg-
ment in the name of Hackney, receiver, etc., against the
appellant in this case.

The appeal presents a single question, which is whether
knowledge possessed by its officer and agent of some infirmity
in a negotiable instrument, or defect in the title of the person
negotiating the same, is to be imputed to a corporation dis-
counting it under circumstances which would otherwise con-
stitute it a holder in due course, where such knowledge was
acquired by the agent in his individual capacity and not com-
municated to any other officer or agent of the corporation
authorized to act for it in the transaction, where the interest
of the officer or agent having such knowledge was adverse to
that of the bank in the particular transaction, but where he
actually participated therein.

That question grew out of these facts. There was evidence
in the case tending to show that Palmer represented to Loh-
muller that the lumber company, which afterwards "failed,"
was in "very good standing," that he would "sure get the
profits," that a certain George Schoenhals had bought "three
thousand dollars worth of stock," and that the note could be
paid off in small instalments; that the representations as to
the financial standing of the company and the purchase of
stock by Schoenhals were false in fact; that on January 4th,
1927, before its maturity, the bank discounted the note after
it had been approved for discount by its discount committee;
that, at the time that committee considered the matter,
Palmer, who was a member of it, was present and concurred
in its action; that no other member of the committee, nor any
other official of the bank, knew of any fact or circumstance
indicating any infirmity in the note or defect in the title of
the lumber company to it; and that when the note was dis-

counted Palmer was general manager of the lumber company and president and a member of the discount committee of the bank.

The point was presented by this statement contained in the plaintiff's third prayer, which was granted: "And the court further instructs the jury that if they shall find that the defendant was induced to sign and deliver the promissory note offered in evidence through the fraud of one T. B. Palmer, knowledge of such fraud was not thereby imputed to the First National Bank of Dunbar, Pa., because in the transaction involving the signing and delivery of said note by the defendant, the said T. B. Palmer was acting in behalf of General Lumber Products, Inc., the payee of the note, and not the said First National Bank of Dunbar, Pa." There was no special exception to the prayer on the ground that it assumed facts, or that there was in the case no evidence legally sufficient to support the hypothesis of fraud upon which it was predicated, so that those objections are not open on this appeal. Code, art. 5, sec. 10. We will consider it therefore as though it properly submitted the legal proposition which we have stated. In respect to that, briefly stated, the appellant's contention is that, since, at the time the discount committee approved the note for discount, Palmer was president of the bank and a member of the committee and acted with it, his knowledge of its inception and purpose was the knowledge of the bank. The appellee, on the other hand, contends that in that transaction Palmer represented the lumber company which presented the note for discount, that his interest was adverse to that of the bank, that knowledge which he acquired, as an individual or as agent for the lumber company, of facts affecting its title to the note, could not as a matter of law be imputed to the bank, and that, as it had no actual knowledge of any infirmity in the instrument or defect in the lumber company's title to it, it took the note as a holder in due course, free from any equities or defences which might be presented in an action between the original parties to it. It is axiomatic that the knowledge of an agent as to any matter within the scope of his authority is the

knowledge of his principal. *Mechem on Agency,* sec. 1803. But that rule is subject to the qualification, recognized by at least the weight of authority, that where the interest of the agent in the particular transaction is adverse to that of his principal, his knowledge will not be imputed to the principal. *Ibid.* sec. 1815 *et seq.* And while there is some confusion as to the precise boundaries of that qualification, it is generally recognized as extending to cases in which it clearly appears that *pro hac vice* it would be unreasonable to expect the agent to represent his principal. *Ibid.* The most satisfactory reason for the rule which imputes the knowledge of the agent to the principal is that their interests are identical. Consequently, where no such identity exists, the reason for the rule ceases, and the rule should fail, for *"quamvis lex generaliter loquitur, restringenda tamen est, ut cessante ratione et ipsa cessat."* *Peloubet, Legal Maxims;* 4 *Co. Inst.* 330; 51 *C. J.* 114. And as the general rule extends to all cases in which the agent acts within the scope of his authority in reference to a matter over which his authority extends, and in which the interests of the agent and his principal are identical, the qualification should by a parity of reasoning reach all cases in which there is no such identity. It has been said that that theory of the rule is inconsistent with the result reached in such cases as *Schwind v. Boyce,* 94 Md. 510, 51 A. 45, which charge the principal with knowledge obtained by the agent prior to the agency, and which proceed upon the principle that it is the duty of the agent to convey to his principal all knowledge in his possession touching matters within the scope of his agency over which his authority extends, and that it will be presumed that he has discharged that duty. 2 *C. J.* 862. But that inconsistency is more apparent than real. For while not necessarily contractual, the relation of agency is always consensual (*Restatement, A. L. I. Agency,* sec. 2), is vicarious in its nature, involves for the duration of the agency an identity of interests between the principal and the agent, and imposes upon the agent the duty of communicating to the principal all knowledge which the agent possesses, which could materially affect the acts of parties to transac-

tions in which the agent, being thereto authorized, acts for the principal. Logically the identification theory is inconsistent with imputing to the principal knowledge acquired by the agent prior to the agency, which was done in *Schwind v. Boyce, supra,* or knowledge acquired by him while acting outside of the scope of his agency, which the court refused to do in *Hardy v. Chesapeake Bank,* 51 Md. 588; *Gemmell v. Davis,* 75 Md. 546, 23 A. 1032; *Black v. First Nat. Bank,* 96 Md. 423, 54 A. 88; *Winchester v. Balto. & Susq. R. Co.,* 4 Md. 231; *United States Ins. Co. v. Shriver,* 3 Md. Ch. 388. But whether the rule which imputes to the principal the knowledge of his agent depends upon the one theory or the other, or whether it is purely arbitrary, it has long been settled in this state that it does not extend to cases in which the knowledge of the agent was acquired privately and not communicated to his principal (*Black v. First Nat. Bank, supra; Gemmell v. Davis, supra; United States Ins. Co. v. Shriver, supra*), especially where the interests of the agent in the particular transaction are adverse to those of his principal. *Bradford v. Harford Bank,* 148 Md. 15, 128 A. 899. And it may be said that that qualification of the general rule is consistent with both reason and justice. The principal appoints the agent to represent him, and, so long as the agent does represent him, it is meet and proper that he should be bound by any knowledge that comes to the agent while acting within the limits of the powers and authority with which the principal has clothed him. But when he departs from the duty which the agency imposes upon him and, in violation of the trust reposed in him, acts not for the principal, but for himself and against the principal, it would be hard indeed to charge the principal with knowledge which every dictate of self-interest would prompt the agent to conceal from him. And while there may have been some inconsistency in the application of that principal, its soundness is generally recognized, and that, too, whether the adverse character of the agent's interest is open and notorious or whether it is secret, and whether he actually participates in the particular transaction in issue, or whether he does not;

the test being that, where the agent acquires the knowledge in some transaction beyond the scope of his agency, it will not be imputed to the principal in any transaction between the principal and the agent or between the principal and a third party, in which the interest of the agent is of such a character that it may rationally and naturally be inferred that he will conceal his knowledge. *L. R. A.* 1918C, 902.

Applying those general principles to the acts of officers, employees, or other agents of banking corporations, it is generally held that the knowledge privately acquired by any such agent, and not communicated to his principal or associates, will not be imputed to the corporation in matters in which the interest of the agent is adverse to its own, even where the agent actively participates in the transaction. *Black v. First National Bank, supra; Bradford v. Harford Bank, supra; Lilly v. Hamilton Bank* (C. C. A.), 178 F. 53, 29 L. R. A. (N. S.) 558 and note; 49 L. R. A. (N. S.) 764 note; *Brookhouse v. Union Pub. Co.,* 73 N. H. 368, 62 A. 219, 2 L. R. A. (N. S.) 993 and note; 2 C. J. "Agency," sec. 549, note 11; *Brannan on Neg. Inst.,* secs. 233, 482; 1 *Morse on Banking,* sec. 104.

The prayer under consideration improperly assumes as a fact that Palmer did represent the lumber company in the transaction involving the discount of the note, but that defect was not made the ground of an objection in the trial court as required by the statute (Code, art. 5, sec. 10), and is not therefore cognizable in this court, and as the legal proposition submitted by the prayer is unexceptionable, we find no error in the ruling of the trial court in respect to it. Doubt has been expressed as to whether the qualification, as expressed in the prayer, to the general rule which imputes the knowledge of an agent to his principal, applies to the "managing officers of a corporation." 2 *Pomeroy Eq. Jur.* (2d Ed..), sec. 675. But, as stated in *Mechem on Agency,* sec. 1825, "the distinction has not been generally approved, and no sound reason is perceived why such a distinction should be made," and that statement is supported by the substantial weight of authority. *Brookhouse v. Union Publish-*

*ing Co.,* 73 N. H. 368, 62 A. 219; *Black v. First Nat. Bank, supra; Bradford v. Harford Bank, supra; Amarillo Nat. Bank v. Harrell* (Tex. Civ. App.), 159 S. W. 858; *Union State Bank v. First Nat. Bank,* 122 Ark. 612, 184 S. W. 411; *Reid v. Linder,* 77 Mont. 406, 251 P. 157.

All exceptions other than that to the trial court's refusal of the defendant's third prayer were abandoned in this court, and since that ruling was free from error it follows that the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*