**MARTIN MARIETTA CORPORATION,**
Plaintiff–Appellee,

v.

**GOULD, INC., Defendant–Appellant.**

No. 94–1665.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1994.

Decided Nov. 20, 1995.

**ARGUED:** Kevin David McDonald, Jones, Day, Reavis & Pogue, Washington, DC, for Appellant. Francis B. Burch, Jr., Piper & Marbury, Baltimore, Maryland, for Appellee. **ON BRIEF:** Barbara McDowell, Brian P. Maschler, Jones, Day, Reavis & Pogue, Washington, DC, for Appellant. Robert J. Mathias, Glen K. Allen, John C. Dougherty, Piper & Marbury, Baltimore, Maryland, for Appellee.

Before ERVIN, Chief Judge, MICHAEL, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

Affirmed and remanded by published opinion. Judge MICHAEL wrote the opinion, in which Chief Judge ERVIN and Senior Judge PHILLIPS joined.

## OPINION

MICHAEL, Circuit Judge:

Pursuant to 28 U.S.C. § 1292(b) the district court has certified for interlocutory appeal the portion of its February 24, 1994, order denying the motion of defendant Gould Inc. for summary judgment on statute of

limitations grounds. The motion called for the application of agency law principles dealing with imputation of knowledge to determine when Maryland's three-year statute of limitations began to run. We are now asked to decide whether the "adverse interest" exception, which rebuts the normal presumption that an agent will convey knowledge to his principal, delays the accrual of a cause of action when a former employer (on the facts presented here) seeks to impute knowledge of alleged claims from its former employees to their new principal. Gould, the former employer, seeks to impute such knowledge from its former employees to plaintiff Martin Marietta Corporation, the new principal, for purposes of a transaction in which Gould and its former employees possessed interests adverse to those of Martin Marietta. We accept jurisdiction.

The district court denied Gould's motion for summary judgment because the court concluded that the recent decision in *Hecht v. Resolution Trust Corporation*, 333 Md. 324, 635 A.2d 394 (1994), broadened the scope of the adverse interest exception when a defendant seeks to impute knowledge in order to establish a statute of limitations defense. We do not agree with the district court's analysis of *Hecht*. Nevertheless, under Maryland's traditional interpretation of the adverse interest exception, we hold that no imputation of knowledge can be presumed on the facts of this case. For this reason we affirm the denial of Gould's motion for summary judgment and remand for further proceedings consistent with this opinion.

## I.

As anyone familiar with the novels of Tom Clancy will know, a towed sonar array is a listening device dragged behind submarines and surface ships. Silence is essential; a noisy towed array reduces optimal sound detection and increases the possibility that enemy submarines and ships will go undetected.

Gould, through its Ocean Systems Division, was in the business of developing and producing towed arrays.[1] Martin Marietta wanted to expand into this field, and in 1988 Martin Marietta and Gould entered into negotiations concerning Martin Marietta's possible acquisition of Ocean Systems. During the course of negotiations Ocean Systems' employees made statements to Martin Marietta concerning the status and viability of towed arrays then under design. At the time, Ocean Systems was preparing to submit to the United States Navy a proposal for a new, thinline towed array system.[2] If the Navy accepted the proposal, the new towed array would constitute a substantial asset of Ocean Systems.

On August 26, 1988, Gould and Martin Marietta entered into a written Asset Purchase and Sale Agreement (Acquisition Agreement), which called for Martin Marietta to buy Ocean Systems and other assets, including the proposal to the Navy, for $117.5 million. In the Acquisition Agreement Gould made numerous representations and warranties concerning the assets of Ocean Systems. Prior to closing Gould submitted its towed array proposal to the Navy. On September 30, 1988, Martin Marietta's acquisition of Gould's Ocean Systems Division closed, and the employees of Gould's Ocean Systems Division became the employees of Martin Marietta.

On October 24, 1988, Martin Marietta ratified the towed array proposal made to the Navy. On January 11, 1989, the Navy accepted the proposal and awarded the towed array contract to Martin Marietta.

The towed array failed to meet Navy specifications. Among other things, it made too much noise, a problem that Martin Marietta and its newly acquired Ocean Systems Division were unable to fix over the course of the next three years. On January 6, 1992, the Navy issued a termination for default on the

---

**1.** We recite the facts in the light most favorable to non-movant Martin Marietta for the sole purpose of considering Gould's motion for summary judgment on statute of limitations grounds.

**2.** Before the advent of thinline arrays, towed arrays typically were three inches in diameter

and were short enough to be stored in a shroud attached to the outer hull of a submarine. Thinline arrays, by contrast, are less than one and a half inches in diameter and are so long that they must be reeled onto a capstan stored in an aft ballast tank.

contract. On April 2, 1992, Martin Marietta and the Navy reached a settlement. Needless to say, the towed array system did not produce the positive financial results Martin Marietta had anticipated when it bought Ocean Systems in 1988.

While Martin Marietta was attempting to redesign the towed array to meet Navy specifications, it submitted to Gould a notice of claim for indemnification under the Acquisition Agreement. Thereafter, Martin Marietta and Gould agreed to toll (for 90 days) any applicable statute of limitations "to the extent [it] ... had not run as of December 9, 1991." Accordingly, to establish a statute of limitations defense under Maryland's three-year statute, Md.Cts. & Jud.Proc. § 5–101 (1995), Gould must show that Martin Marietta's claims under the Acquisition Agreement accrued on or before December 9, 1988.

On June 22, 1992, Martin Marietta filed this diversity action against Gould in the United States District Court for the District of Maryland. In its complaint Martin Marietta asserts claims for misrepresentation, breach of fiduciary duty, and breach of various provisions, warranties, and covenants of the Acquisition Agreement.[3] It seeks $30 million in damages. In turn, Gould has moved for summary judgment, arguing that Maryland's three-year statute of limitations bars Martin Marietta's claims.

Gould's limitations defense hinges on a legal fiction: imputing knowledge of alleged misrepresentations concerning the towed array proposal from its former employees at Ocean Systems to Ocean Systems' new principal, Martin Marietta. According to Gould, after Martin Marietta acquired Ocean Systems, the knowledge of Gould's former employees is presumed to have been imputed to Martin Marietta for purposes of running the statute of limitations. Thus, Gould says that Martin Marietta's failure to bring suit within three years after October 1988 is fatal to all of its claims.

Legal fictions are based on presumptions about reality, and a fiction is given life so long as common experience supports its application. The general rule of imputing knowledge from agent to principal is such a fiction. The adverse interest exception recognizes that under certain circumstances the fiction must give way because the facts do not support it. As we will explain, the legal fiction that Gould proposes is not premised on reality, and we decline the invitation to decide the issue before us in defiance of the facts.

II.

Maryland law governs our decision in this case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). And it is not our place to suggest expansions of state law. *See, e.g., St. Paul Fire & Marine Insurance Co. v. Jacobson,* 48 F.3d 778, 783 (4th Cir.1995); *Burris Chem., Inc. v. USX Corp.,* 10 F.3d 243, 247 (4th Cir.1993).

Under the Maryland statute of limitations applicable here, "[a] civil action at law shall be filed within three years from the date it accrues...." Md.Cts. & Jud.Proc. § 5–101 (1995). In the past Maryland applied a "date of the wrong" rule to determine when a cause of action accrues. Now Maryland generally applies the discovery rule, which provides that a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong. *See, e.g., Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981).

As for agency law, Maryland follows the traditional rules concerning the imputation of knowledge from agent to principal. In most instances it charges a principal with his agent's knowledge. *See, e.g., Baltimore Am. Ins. Co. v. Ulman,* 165 Md. 630, 170 A. 202 (1934); *Schwind v. Boyce,* 94 Md. 510, 51 A. 45 (1902). However, the adverse interest exception permits a principal to

---

**3.** Counts 1 through 4 of Martin Marietta's complaint allege claims for breach of the Acquisition Agreement. Count 5 alleges a claim for negligent misrepresentation resulting from alleged misrepresentations made in the towed array proposal and in the negotiations leading to the Ac-

quisition Agreement. Count 6, alleging a claim for breach of fiduciary duty, was dismissed by the district court on summary judgment, and that decision is not before us on this interlocutory appeal.

avoid imputation when the agent's interests are sufficiently adverse to the principal's interests. *See, e.g., Lohmuller Bldg. Co. v. Gamble,* 160 Md. 534, 154 A. 41 (1931).

■ The district court denied Gould's motion for summary judgment, relying primarily upon the Court of Appeals of Maryland's decision in *Hecht v. Resolution Trust Corporation,* 333 Md. 324, 635 A.2d 394 (1994). In *Hecht* the court was asked to decide whether Maryland law recognizes the "adverse domination" doctrine as an exception to the general rule of imputing knowledge from agent to principal for purposes of delaying the accrual of causes of action by a corporation against its former officers and directors. *Id.* at 398, 635 A.2d 394. As applied by many federal courts, the adverse domination doctrine operates either to delay the accrual of a cause of action or to toll limitations in situations involving claims by a corporation against its officers and directors for injuries to the corporation. *Id.* at 401–02, 635 A.2d 394 (collecting cases and outlining distinctions among the several versions of the doctrine). After an exhaustive analysis of Maryland's discovery rule and the adverse domination doctrine, the court held that the doctrine creates a rebuttable presumption that a cause of action does not accrue against culpable directors and officers until a "disinterested majority" gains control of the corporation. *Id.* at 408–09, 635 A.2d 394.

■ The thrust of the Maryland court's decision focused upon the issue of control. That is, because a board of directors controls the ability of a corporation to bring suit, it is neither reasonable nor fair to charge a corporation with knowledge of wrongdoing by its corporate officers and directors so long as those officers and directors remain in control of the corporation. *Id.* at 408, 635 A.2d 394 (the doctrine "provides a presumption that there is no knowledge and no accrual while wrongdoers control the corporation"). The court also specifically distinguished the adverse interest exception, stating that the adverse domination doctrine "goes beyond the principles of agency law which provide that knowledge of an agent will not be imputed to the principal if the agent acts adversely to the principal." *Id.* In other words, whether the adverse domination doctrine rebuts the presumption that an agent's knowledge is imputed to his principal does not depend upon the applicability of the adverse interest exception.

The district court, however, interpreted *Hecht* as altering the reach of Maryland's traditional imputation rule for purposes of both the adverse domination doctrine *and* the adverse interest exception. In particular, because an employee might not convey to his employer information that would cause the employee to face criticism of his job performance, the district court believed that the equitable considerations that informed the decision in *Hecht* applied in the present case to broaden the adverse interest exception beyond its traditional scope. The district court therefore held that a jury question was presented as to "whether or not the [Ocean Systems] employees in question could reasonably have been expected under the particular circumstances to take the affirmative step of communicating information which would raise criticism of their performance." We disagree with the district court on its interpretation of *Hecht.*

*Hecht* has little to do with imputing knowledge outside the context of the adverse domination doctrine. The board of directors in *Hecht* knew of the wrongs all along. It authorized each transaction. Simply put, *Hecht* recognizes the practical reality that an adversely dominated board will not sue itself. Therefore, although the court in *Hecht* discusses whether an adversely dominated corporation could "know" of wrongs committed by its board of directors, we doubt that the court intended to change either the general rule of imputation or the adverse interest exception.

With that said, we turn to the application of these traditional principles of agency law to the facts of this case. As for that analysis, the decision in *Hecht* does have importance to the extent that the Court of Appeals of Maryland reaffirmed the existence of the adverse interest exception and cited its prior decision in *Lohmuller Building Co. v. Gamble* as support for that exception. *Hecht,* 635 A.2d at 405.

### III.

The general rule of imputation of knowledge from agent to principal rests upon a legal fiction and a presumption. The fiction is that when the agent acts within the scope of the agency relationship, there is an identity of interest between principal and agent. *Lohmuller Bldg. Co. v. Gamble,* 160 Md. 534, 154 A. 41, 43 (1931). The presumption is that the agent will perform his duty and communicate to his principal the facts that the agent acquires while acting in the scope of the agency relationship. 3 Fletcher Cyc.Corp. § 790 (rev. ed. 1994); *see Baltimore Am. Ins. Co. v. Ulman,* 165 Md. 630, 170 A. 202, 206 (1934); 1 West's Maryland Law Encyclopedia, *Agents and Factors* § 111 (1960). Thus, under the rule of imputation the principal is chargeable with the knowledge the agent has acquired, whether the agent communicates it or not.[4]

As its name suggests, the adverse interest exception recognizes that when the interests of the agent and the principal are adverse, the agent's knowledge cannot be imputed to his principal. *Baltimore Am. Ins. Co.,* 170 A. at 206; *Lohmuller Bldg. Co.,* 154 A. at 44. Not surprisingly, the exception rests upon two theories that defeat the fiction and presumption underlying the general rule imputing knowledge from agent to principal. First, when the agent is acting outside the scope of the agency relationship, the legal fiction that the agent and the principal share an identity of interest is destroyed. And second, when the interests of the agent and the principal are adverse, the presumption that an agent will perform his duty and communicate knowledge to his principal no longer exists. Thus, under either theory, knowledge is not imputed from the agent to his principal. 3 Fletcher Cyc.Corp. § 820.

Depending upon the particular facts presented, it may be appropriate to focus upon one theory over the other in determining whether the exception applies. Under either theory, however, the agent must have totally abandoned the principal's interest and be acting for his own purposes or those of another. *See id.* § 819. In other words, the interests of the agent must be completely adverse to those of his principal. *See id.* § 821 (agent's interests must be so incompatible with the principal's interest "as practically to destroy the agency or render it reasonably probable that an ordinary person . . . will withhold such knowledge from the principal"). *Cf. Baltimore Am. Ins. Co.,* 170 A. at 206 ("Every principal assumes the risk of the agent's fraud in the discharge of his duties in a representative capacity").

Complete adversity is required because when the agent is acting both for his own benefit and that of his principal, the agent is acting within the scope of the agency relationship, and it is reasonable to presume that the agent will communicate the knowledge to his principal. However, when the agent acquires knowledge outside the scope of the agency relationship (that is, while the agent is not acting in his representative capacity), the knowledge so acquired is not imputed to the principal if it is reasonable to presume that the agent will conceal the knowledge. As the Court of Appeals of Maryland explained in *Lohmuller Building Co.:*

> [T]he test being that where the agent acquires the knowledge in some transaction beyond the scope of his agency, it will not be imputed to the principal in any transaction between principal and the agent or between the principal and a third party, in which the interest of the agent is of such a character that it may be rationally and naturally inferred that he will conceal his knowledge.

154 A. at 44.

Thus, to determine whether the adverse interest exception applies in this case, we must answer three questions. First, did Ocean Systems acquire the knowledge (that Gould seeks to impute) in some transaction beyond the scope of the agency relationship between Ocean Systems and Martin Marietta? Second, as to which transaction does Gould seek to impute knowledge from Ocean Systems to Martin Marietta? And third, as to that particular transaction, are the interests of Ocean Systems and the interests of

---

4. Under the general rule, the knowledge imputed to the principal is considered actual knowledge, not constructive. *Plitt v. Kellam,* 222 Md. 383, 160 A.2d 615, 619 n. 4 (1960).

Martin Marietta sufficiently adverse that it is rational and natural to infer that Ocean Systems will conceal its knowledge from Martin Marietta?

As for the first question, it is clear that Gould seeks to impute knowledge that Ocean Systems acquired beyond the scope of the agency relationship between Ocean Systems and Martin Marietta. In fact, the very basis for Gould's imputation argument is that the knowledge Ocean Systems employees acquired when making the towed array proposal on behalf of Gould must be imputed to Martin Marietta after Ocean Systems became an agent of Martin Marietta on September 30, 1988.

The answer to the second question is equally clear: Gould seeks to impute knowledge from Ocean Systems to Martin Marietta for purposes of the Gould/Martin Marietta Acquisition Agreement. It is pursuant to the Acquisition Agreement that Gould transferred its towed array proposal to Martin Marietta on September 30, 1988. Indeed, it is that Agreement which forms the basis for Martin Marietta's claims against Gould. Thus, the transaction at issue here encompasses the Gould/Martin Marietta Acquisition Agreement, the negotiations leading up to the Agreement's execution, and the proposal transferred by Gould to Martin Marietta pursuant to the Agreement.

That brings us to the third question, whether the interests of Ocean Systems and the interests of Martin Marietta are sufficiently adverse for purposes of the Acquisition Agreement that it is rational and natural to infer that Ocean Systems employees would conceal their knowledge from Martin Marietta. At first glance, this may appear to raise a jury question similar to the one that the district court believed was presented.[5] It is, however, clear as a matter of law that our third question must be answered in the affirmative if (in fact) complete adversity exists between Ocean Systems and Martin Marietta for purposes of the Acquisition Agreement.

Indeed, if complete adversity exists, then it is only rational and natural to infer that Ocean Systems employees would conceal their knowledge from Martin Marietta.

Yet, because it is Gould that has sought interlocutory appeal of the denial of its summary judgment motion, we may only decide whether Gould is entitled to judgment as a matter of law, and we must view the record in the light most favorable to non-movant Martin Marietta. In that light the factual record shows that complete adversity exists between Ocean Systems and Martin Marietta for purposes of the Acquisition Agreement.

In particular, Gould and Martin Marietta negotiated the Acquisition Agreement at arm's length, and Ocean Systems participated in those negotiations as a representative of Gould. Ocean Systems' allegiances belonged to Gould and to Gould alone at the time the Agreement was negotiated, at the time it was executed, and before the acquisition closed on September 30, 1988. Thus, "it may be rationally and naturally inferred," *Lohmuller Bldg. Co.*, 154 A. at 44, that Ocean Systems employees would conceal their knowledge from Martin Marietta for purposes of a transaction in which they had interests in direct and complete conflict with those of Martin Marietta. *See* 3 Fletcher Cyc.Corp. § 821 (agent's knowledge is not imputable to corporation when agent and corporation deal with each other at arm's length).

## IV.

There is a final agency law principle that bears on our consideration of this case. Under Maryland law, when an agent acquires knowledge prior to the existence of the agency relationship, knowledge may be imputed to his principal once the agency relationship is created for purposes of a transaction in which the agent acts for the benefit of his new principal. *Schwind v. Boyce*, 94 Md. 510, 51 A. 45, 47–48 (1902).[6]

---

**5.** As stated in Part II, *supra,* the district court believed it was a jury question "whether or not the [Ocean Systems] employees in question could reasonably have been expected under the particular circumstances to take the affirmative step of communicating information which would raise criticism of their performance."

**6.** In *Schwind* the defendant bought stock that the seller had pledged to the plaintiff. 51 A. at 46.

The rule from *Schwind* overlaps with the adverse interest exception to the extent that both principles may apply when the agent acquires knowledge prior to the existence of the agency relationship. *See Lohmuller Bldg. Co.*, 154 A. at 43 (attempting to reconcile *Schwind* with the adverse interest exception and stating that, "[l]ogically, the identification theory [which is based on the fiction that the agent and the principal share an identity of interest] is inconsistent with imputing to the principal knowledge acquired by the agent prior to the agency . . .").

Gould's theory in this case derives in large measure from *Schwind.* Specifically, Gould argues that because Ocean Systems employees worked for the benefit of Martin Marietta in transactions after the closing of the acquisition on September 30, 1988 (*e.g.*, ratification of the towed array proposal and the Navy/Martin Marietta contract), the knowledge Ocean Systems employees acquired prior to the existence of the agency relationship with Martin Marietta must be imputed to Martin Marietta for all purposes.

 However, what Gould fails to recognize, and what *Lohmuller Building Co.* makes clear, is that merely because knowledge may be imputed from agent to principal for purposes of one transaction does not necessarily mean that knowledge must be imputed for purposes of all transactions. Indeed, Gould asks us to reach the anomalous result that even though complete adversity existed at the time of the Acquisition Agreement, because an agency relationship was thereafter created, knowledge can be imputed to

Martin Marietta for purposes of that prior arm's length and conflict-laden transaction. Maryland would not accept such an anomaly under *Lohmuller Building Co.* 154 A. at 44 ("it has long been settled in this state that [the rule of imputation] does not extend to cases in which the knowledge of the agent was acquired privately and not communicated to his principal, especially where the interests of the agent *in the particular transaction* are adverse to those of his principal") (emphasis supplied; citations omitted).

We emphasize that this case would be entirely different if the question involved the imputation of knowledge acquired by Ocean Systems employees prior to the existence of the agency relationship with Martin Marietta for purposes of a transaction in which Ocean Systems acted for the benefit of Martin Marietta. For example, if the Navy brought a claim against Martin Marietta because the towed array system did not meet specifications, then knowledge acquired by Ocean Systems employees while working for Gould would be imputed to Martin Marietta for purposes of that claim. In other words, because Martin Marietta ratified the towed array proposal and entered into the contract with the Navy while Ocean Systems was acting for the benefit of Martin Marietta in producing the towed array, it is reasonable from the Navy's standpoint to expect that Ocean Systems employees would have informed Martin Marietta of any deficiencies with the towed array, even if such knowledge was acquired when Ocean Systems was an agent of Gould.

The defendant's lawyer, when not acting on behalf of the defendant, had learned that the seller and the plaintiff were engaged in a legal battle over the ownership of the stock. The lawyer failed, however, to communicate this knowledge to the defendant at the time he executed the stock purchase on behalf of the defendant. *Id.* 51 A. at 47. The Court of Appeals of Maryland held that the lawyer's previously acquired knowledge must be imputed to the defendant for purposes of the defendant's purchase of the stock. *Id.* 51 A. at 48. *See also Baltimore Am. Ins. Co.*, 170 A. at 205 (acting outside the scope of the agency relationship, agent of mortgagors acquired knowledge that mortgage had been pledged as collateral; such knowledge imputed to mortgagors for purposes of a transaction in which the agent of mortgagors acted in scope of

the agency relationship); Restatement (Second) of Agency § 276 (1957) (time, place, and manner of the agent's acquisition of knowledge is immaterial in determining the liability of his principal because of it). Section 276 of the second Restatement, *Schwind*, and *Baltimore Am. Ins. Co.* all impute knowledge from an agent to his new principal for purposes of a transaction in which the agent acted for the benefit of his principal. Here, however, Gould seeks to impute knowledge from Ocean Systems to Martin Marietta for purposes of a transaction in which Ocean Systems had interests adverse to Martin Marietta. Indeed, Gould seeks to impute knowledge from Ocean Systems to Martin Marietta for purposes of a transaction in which Ocean Systems acted for the benefit of Gould.

**776**

The error that Gould makes is to assume that because knowledge can be imputed for purposes of Martin Marietta's ratification of the proposal and the Navy/Martin Marietta contract, it also can be imputed for purposes of the Gould/Martin Marietta Acquisition Agreement. However, when the record is viewed in the light most favorable to non-movant Martin Marietta, the presumptions associated with the Acquisition Agreement are far different than the presumptions associated with a transaction that occurred after Ocean Systems became an agent of Martin Marietta and began working for Martin Marietta's benefit. As to the Acquisition Agreement, the interests of Ocean Systems are adverse to the interests of Martin Marietta because Gould (Ocean Systems' principal at the time) and Martin Marietta negotiated the Acquisition Agreement at arm's length, and Ocean Systems participated in those negotiations as a representative of Gould. Therefore, for purposes of the Acquisition Agreement, it cannot reasonably be expected that Ocean Systems' employees would communicate knowledge of alleged misrepresentations to Martin Marietta even though an agency relationship was thereafter created.

## V.

In sum, to the extent that the district court determined that the decision in *Hecht v. Resolution Trust Corporation*, 333 Md. 324, 635 A.2d 394 (1994), broadened the scope of the adverse interest exception, we must disagree with the district court. However, because the adverse interest exception applies in this case, we affirm the district court's denial of Gould's motion for summary judgment and remand for further proceedings consistent with this opinion.

*AFFIRMED AND REMANDED.*